## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SANDRA ALTIERI, Individually and On Behalf of All Others Similarly Situated,** | **No. 4:10-CV-11977-FDS** |
| **Plaintiff,** | |
| **v.** | |
| **REEBOK INTERNATIONAL, LTD.,** | |
| **Defendant.** | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Sandra Altieri ("Altieri" or "Plaintiff"), on behalf of herself and all others similarly situated, hereby submits the following Amended Class Action Complaint ("Complaint") against defendant Reebok International Ltd. ("Defendant" or "Reebok"), and upon personal knowledge as to her own acts and status, and upon information and belief as to all other matters, alleges as follows:

### I.   NATURE OF THE ACTION

1.      At least three major footwear producers have introduced their own varieties of toning shoes to the United States footwear market in the last several years.  Although each variety of toning shoe varies in its details, each is premised on the idea that instability on the bottom of a shoe allows a consumer wearing the shoe to achieve greater muscle definition ("toning") through walking in the producer's product than would be achieved from walking in traditional footwear lacking the toning shoe's features.

2.      There is no evidence, however, that any brand of toning or instability shoe – including Reebok's EasyTone footwear – helps wearers exercise more intensely, burn more

calories or improve muscle strength and tone to any greater degree than traditional footwear. Yet, consumers are being charged a premium for Reebok's EasyTone footwear.

3.      This case challenges Reebok's false, deceptive, and misleading statements in its labeling, advertising, promotion, and marketing of its EasyTone footwear ("EasyTone" or "EasyTones").

4.      Reebok, in its labeling, advertising, promotion, and marketing of its EasyTone footwear promises that walking in EasyTones results in increased muscle activation and toning over what a consumer would achieve walking in traditional, less expensive, footwear.  For example, an EasyTone television commercial narrates: "Reebok EasyTone.  Proven to tone your hamstrings, calves and butt up to 28% more.  Reebok EasyTone with balance ball inspired technology.  Better legs and a better butt with every step."  Reebok also claims these purported benefits are substantiated by testing and related research, including testing the product on hundreds of people over the past two years resulting in more than 20,000 hours of data.

5.      Reebok's increased muscle activation and toning claims, however, are false.

6.      Indeed, walking in EasyTone footwear provides no statistically significant increase in muscle activation or toning over walking in traditional, and less expensive, footwear. As a recent study sponsored by the independent American Council on Exercise concluded, "wearing so-called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe.  Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone more than wearing a regular running shoe."  *See* Pocari, John P., *et al.*, "The Physiologic and Electromyographic Responses to Walking in Regular Athletic Shoes Versus 'Fitness Shoes'," *available at* http://www.acefitness.org/getfit/studies/toningshoes-findings.pdf, last accessed Jan.

2

7, 2011 ("Pocari Report").

7.      Despite the falsity of Reebok's claims and assertions, when Reebok introduced its EasyTone footwear line in the United States footwear market in 2009, it launched a massive advertising and marketing campaign prominently featuring "increased muscle activation" as a benefit of its EasyTone footwear, and further touted that this "increased muscle activation" claim was backed by research and laboratory tests.

8.      Reebok's nationwide multimedia advertising campaign has been extensive and comprehensive.  Reebok has spent millions of dollars on, among other things, print and television advertisements intended to convey these deceptive messages to consumers throughout the United States, including Plaintiff and the other members of the proposed Class.  Reebok's advertising campaign for its EasyTone footwear is ongoing.

9.      As a result of Reebok's false claims about its EasyTone footwear, consumers, including Plaintiff and the other members of the proposed Class, have purchased footwear that does not perform as advertised.

10.     Moreover, Reebok has been able to charge, and Plaintiff and the other members of the proposed Class have paid, a price premium for EasyTone footwear over traditional footwear.  Reebok has used these claims regarding the purported benefits of EasyTone to charge a premium for the shoe and achieve massive sales.

11.     During an annual shareholder meeting held on May 6, 2010, adidas, Reebok's parent company, stated in relevant part:

> ***Reebok is an industry leader in the toning category.***  This category didn't even exist twelve months ago.  It was us who created it with the Reebok EasyTone™.  To make clear the magnitude of our success: In 2009, sales volumes of Reebok shoes in this category didn't even reach the one million mark.  ***And now this year [2010], in the USA alone, we expect to sell well over five million pairs of toning shoes – the majority at a price point of 100 dollars or above. Globally, we expect***

*to sell up to 10 million pairs of toning shoes.*

Herbert Hainer, *The Spoken Word Shall Prevail*, adidas Group (May 6, 2010), http://www.adidas-group.com/en/investorrelations/assets/agm/2010/HV2010_Rede-en.pdf (last visited Jan. 7, 2011) (emphasis added).

12.     Unbeknownst to consumers, Reebok's claims relating to the physiological benefits of EasyTone shoes are deceptive.  EasyTone shoes provide no health benefit to users beyond what any traditional footwear provides.  Worse, EasyTone shoes have actually caused some consumers physical harm.

13.     Plaintiff brings this lawsuit against Reebok on behalf of herself and a nationwide Class of all other similarly situated purchasers of EasyTone footwear in the United States, alleging claims of unjust enrichment, untrue and misleading advertising in violation of M. G. L. c. 266 §91, and unfair and deceptive conduct in violation of M.G.L., c. 93A, § 2.

## II.  JURISDICTION AND VENUE

14.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).   In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Reebok's state of citizenship, which is the Commonwealth of Massachusetts.

15.     This Court has personal jurisdiction over Reebok because a substantial portion of the wrongdoing alleged in this Complaint took place in the Commonwealth of Massachusetts and because Reebok is incorporated in, has its principal place of business in, and is authorized to do business in the Commonwealth of Massachusetts.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Reebok resides in this District, many of the acts and transactions giving rise to this action occurred in this

District and because Reebok is subject to personal jurisdiction in this District.

## III.  PARTIES

*Plaintiff*

17.     Sandra Altieri is a resident of the Commonwealth of Massachusetts.  During the time period relevant to this action, Ms. Altieri was exposed to Reebok's false, misleading, and/or deceptive advertisements, purchased a pair of Reebok's EasyTone footwear, and sustained damages resulting from the conduct alleged herein.

*Defendant*

18.     Reebok International Ltd. is a Massachusetts corporation with its principal place of business located at 1895 J.W. Foster Boulevard, Canton, Massachusetts.  Reebok is thus a Massachusetts citizen.  Upon information and belief, the acts complained of herein, including Reebok's deceptive advertising and marketing campaign regarding EasyTone shoes, were conceived, implemented, approved, and/or executed in Massachusetts.  Furthermore, Reebok sells EasyTones to consumers across the United States, both directly – through its more than 220 retail stores nationwide, including throughout Massachusetts, as well as through Internet-based sales – and through third-party retailers. adidas AG, a Herzogenaurach, Germany headquartered sports apparel manufacturer and parent company of the adidas Group, owns Reebok International Ltd.

## IV.   FACTUAL ALLEGATIONS

***Reebok's Introduction and Self-Serving Explanation of EasyTone "Technology"***

19.     Reebok designs, manufactures, markets, distributes, and sells footwear and other products.  One line of footwear marketed and sold by Reebok is its "EasyTone" line.

20.     Reebok began selling its EasyTone footwear in the United States in 2009.

21.     EasyTones are Reebok's contribution to the growing "toning shoe" category of footwear.   Like other so called "toning shoes," Reebok claims that instability created by Reebok's proprietary "balance pod" design (essentially, two plastic/rubber air filled bubbles at the front and heel of the sole of the shoe) results in "increased toning."   Reebok further differentiates its EasyTones from its competitors' products by claiming that balance pod "technology was worked into the shoe without compromising the look."  *See* Press Release, "NO IF'S, AND'S OR BUTT'S ABOUT IT!  PUT YOUR BACK INTO IT WITH REEBOK'S NEW EASYTONES"          (Jun.          23,          2009),          *available*          *at* http://corporate.reebok.com/en/news/2009/No_Ifs_and_or_Butts_About_It_EasyTone.asp,    last visited Jan. 20, 2011.

22.     According to Reebok, the balance pods are designed to give the wearer the feeling of stepping on a mini balance ball, and are "designed to tone [] hamstrings, calves and butt *more than regular sneakers*," as stated in video segments that were available on the Reebok website when visited on October 11, 2010.  (emphasis added).

23.     This so-called "balance ball technology" design is simply a variant on an older design commonly known as a "rocker-bottom" shoe.

24.     The following photographs are representative illustrations of several of Reebok's footwear offerings in its EasyTone line.



25.     Reebok sells EasyTone footwear to United States consumers through a variety of different channels, including through independent retailers (such as Lady Foot Locker or Zappos.com), through Reebok branded retail and outlet stores owned by Reebok's corporate parent, the adidas Group, and through Reebok's website, http://www.reebok.com.

26.     In a June 23, 2009 press release titled "NO IF'S, AND'S OR BUTT'S ABOUT IT!  PUT YOUR BACK INTO IT WITH REEBOK'S NEW EASYTONES," that Reebok issued from Reebok's Canton, Massachusetts headquarters, Reebok represented as follows:

> Canton, MA (June 23, 2009) Reebok makes a pledge to tone the butts and legs of women around the world with its innovative EasyTone footwear. Featuring first-of-its-kind balance pod technology invented by a former NASA engineer, Reebok's EasyTone collection is currently available for a suggested retail price of $99.
>
> Independent university lab tests proved that by wearing EasyTones, a woman could generate up to **28% more butt muscle activation** compared to wearing an ordinary sneaker. The shoe generates these results thanks to proprietary technology invented by former NASA engineer, Bill McInnis. McInnis, who now heads up the Advanced Innovation division at Reebok, spent 18 months perfecting a balance pod system in the sole of the shoe that creates natural instability with each step.
>
> The best part is that the technology was worked into the shoe without compromising the look.
>
> The shoe generates these results thanks to proprietary technology invented by former NASA engineer, Bill McInnis. McInnis, who now heads up the Advanced Innovation division at Reebok, spent 18 months perfecting a **balance pod system in the sole of the shoe that creates natural instability** with each step. This not

only resulted in dramatic improvements when tested in the lab but the design was such that it could be worked into a shoe without compromising the look.

**Says Head of Womens at Reebok, Katrin Ley**, "We believe every woman has the right to a nice butt, even if they are too busy to go to the gym. Reebok EasyTone footwear allows women to tone as they go about their everyday business."

<u>**How it works**</u>

Reebok EasyTone footwear helps tone key leg & butt muscles by using advanced balance pods built into the shoe. The balance pods are designed to create natural instability with every step that a woman takes. This micro-instability forces muscles to adapt and in doing so they work harder.

<u>**How EasyTone is tested**</u>

McInnis and his team used a technique called Electromyography, which involves sensory electrodes being attached to key muscles. These sensors measure the levels of muscle activation as a woman walks. By comparing the changes in muscle activation between different types of shoes, you can determine which shoes are working the muscles hardest. Over a period of several months, a cross section of women tested the shoe in this lab environment.

In these tests, EasyTone was compared with an ordinary performance sneaker. The figures to the left show the maximum increased muscle activation when using EasyTone compared to that shoe. Says McInnis, "The results are better than anything Reebok could have expected. I believe this is a moment we will look at (*sic*) back on in years to come as the creation of a whole new technical category for toning footwear that not only looks good on but makes you look good too."

Reebok EasyTone footwear is available in seven styles to cover all types of activity and preference from fitness enthusiast to casual wear. EasyTones are currently available at top retailers in the US including Lady Foot Locker, Dick's Sporting Goods, Nordstrom, Sports Chalet, and more and on Reebok.com.

(emphasis in original).  A full copy of Reebok's press release is also available from Reebok's

corporate  website,  at  http://corporate.reebok.com/en/news/2009/No_Ifs_and_or_Butts_About_

It_EasyTone.asp, last visited Jan. 20, 2011.

27.     As noted in the press release, and as repeated in the adidas Group's 2009 annual

report, all varieties of EasyTone footwear that Reebok manufactures, advertises, markets, and

sells feature "two balance pods under the heel and forefoot of the shoes" that are claimed to create "natural instability with every step, forcing the muscles to adapt and develop tone."  The adidas Group's 2009 annual report is available from the adidas Group's website, at http://www.adidas-group.com/en/investorrelations/assets/pdf/annual_reports/2009/GB_2009_En.pdf, last visited Jan. 7, 2011 (*hereinafter*, "adidas 2009 Annual Report").  These messages are conveyed in the advertisements that are the subject of this action.

28.     During an interview previously posted on Defendant's website, EasyTone creator, Bill McInnis ("McInnis"), head of Reebok's "advanced innovation," made the following statements:

> We created EasyTone for the busy woman.  Women today are more busy than they've ever been.  They're on their feet all the time, we figured if they're walking around anyway they might as well get benefit while they're doing that.  **The great thing about EasyTone is the more you wear it, the more benefit you get out of it.**
>
> *                *                *
>
> **One of the great things about EasyTone is it takes really no adjustment, you put on the shoe and right away you feel the cushioning, you get the sensation of what it's doing for you.**  That's one of the great selling points of it, why it's doing so well at market right now.

(emphasis added).

29.     In a separate interview with channel 2 HDTV, which is available on YouTube, Mr. McInnis made the following statements about the increased muscle activity created by EasyTone shoes: "28% more muscle activity in the gluteus maximus. . . .11% in the thigh and hamstring area, and 11% in the calves as well."  *See*  YouTube, http://www.youtube.com/watch?v=igqR7Pcxfmk&feature=related (last visited Jan. 7, 2011).

30.     Reebok also repeats its misrepresentations about its EasyTone footwear on its

Internet website, located at www.reebok.com.  This website is available to the general public.

31.     For example, on the front page of the women's EasyTone page of Reebok's website, http://www.reebok.com/US/womens/easytone-shoes, last visited Nov. 11, 2010, Reebok represented, among other things, the following:

**WHAT IS EASYTONE?**

An innovative footwear solution designed to tone and strengthen key leg muscles with every step.

**HOW DOES IT WORK?**

Balance ball inspired technology with moving air creates micro-instability; toning and strengthening key leg muscles with every step.

**OUR TESTING**

We have wear-tested EasyTone with hundreds of people over the past two years resulting in more than 20,000 hours of data.

Feedback from this research shows that users notice the difference immediately and genuinely feel that the shoes work and that their muscles are working harder.

**TONING**

Lab results show improvements in muscle tone when tested in the lab and great reviews from women around the world who have worn them!

***Reebok's False, Deceptive, and/or Misleading Advertising and Marketing***

32.     Reebok has heavily promoted its EasyTone line of shoes by communicating the same message through at least three media: 1) television advertising; 2) other traditional forms of advertising, such as signage in stores, print ads and messages directly placed on the product or its packaging; and 3) Internet advertising, including, among other things, website advertising at

Reebok, http://www.reebok.com/US/womens/easytone-shoes, postings on the video sharing website www.youtube.com, advertisements on Internet search engines including Google, and/or paid sponsorships on websites such as www.sheknows.com.

33.     Regardless of the medium used, Reebok's advertisements for its EasyTone shoes uniformly convey to consumers – as the name "EasyTone" suggests – that they will reap significant health benefits simply by wearing EasyTone shoes, including benefits that cannot be obtained with traditional footwear.  These purported benefits include firmer leg, calf, and buttock muscles, with minimal effort, or just by walking or engaging in regular daily activities.   As set forth herein, however, EasyTone does not provide any of these purported benefits in any greater degree than traditional footwear.

34.     For example, in an EasyTone advertisement released on or about March 3, 2010, Reebok affirmatively states:

> Reebok EasyTone.  Proven to tone your hamstrings, calves and butt up to 28% more.  Reebok EasyTone with balance ball inspired technology.  Better legs and a better butt with every step.

Available at http://www.youtube.com/watch?v=m9ZaAkYEES8, last visited Jan. 20, 2011. Reebok makes substantively similar representations in other of its advertisements and marketing materials as well.

35.     Reebok further repeated the claim that "EasyTone activates certain muscles in your legs more than a traditional walking shoe" in labels attached to each pair of EasyTone shoes sold.  *See*, for example, the following:



36.     EasyTone shoes come in packaging which includes the following inducement to buy the product: "[t]one and strengthen key leg muscles while you walk.  It's as easy as that." This statement is accompanied by a diagram which presents the lower torso of a person that has certain body parts highlighted with increased muscle activity over a traditional shoe as follows, "28% glutes," "11% thighs," and "11% calves."   Copies of Reebok EasyTone packaging are annexed to this Complaint as Exhibit 1.

37.     Moreover, Reebok's EasyTone packaging states that the sneakers are "[d]esigned to strengthen key leg muscles" and that "2 balance pods with moving air create micro-instability, activating key leg muscles." *See* Exhibit 1.

38.     Reebok further claims on its website that with its EasyTone shoes, "your gluteal gluteus maximus muscles will get 28% more of a workout" and "your hamstrings and calves will have to try 11% harder," citing "tests comparing EasyTone to a typical foam based walking shoe

(Reebok Expresswalk)."  A screen image from an interactive portion of Reebok's United States website for EasyTones, http://www.reebok.com/US/, last visited Sep. 22, 2010, making these false claims is reproduced below:

Women                                                                                          Page 2 of 3



http://www.reebok.com/US/                                                              9/22/2010

39.    Reebok has also marketed EasyTones extensively on the Internet.  *See*, for example, the following Internet banner advertisement, which, through graphical implication, repeats the claim that walking in Reebok EasyTone footwear results in 28% more muscle

activation in the gluteus maximus, 11% more muscle activation in the hamstrings, and 11% more muscle activation in the calves:



40.     Reebok further repeats the claim that its EasyTone footwear offers increased muscle activation and toning through its television commercials.

41.     On October 24, 2009, Reebok launched its first major television advertising campaign in the United States highlighting the illusory increased toning benefit of its EasyTone

footwear.

42.     Reebok purchased 3,000 commercial slots in November and December 2009 to further promote its false increased muscle activation and toning claims for its EasyTone footwear products.

43.     For example, one television advertisement, which is available on YouTube, shows a woman wearing skimpy shorts and EasyTones with the statement: "[EasyTone is] the shoe *proven…to work your hams and calves up to 11% harder and tones your butt up to 28% more than regular sneakers, just by walking.*"   (Emphasis added.)   The commercial ends with a voiceover delivering Reebok's catch phrase, "better legs and a better butt with every step."   *See* YouTube, http://www.youtube.com/watch?v=qCHKXICefFw (last visited Jan. 7, 2011).

44.     Another Reebok television advertisement entitled, "Black and White," also available on YouTube, shows a female body lying in bed, wearing nothing but underwear and EasyTone shoes.  The voiceover states, "[d]iscover up to 28% more of a workout for your butt, up to 11% more for your hamstrings and calves…better legs and a better butt with every step." *See* YouTube, http://www.youtube.com/watch?v=sDVB4881c2I (last visited Jan. 7, 2011).

45.     These statements, and others similar to them, demonstrate Reebok's intention, as the name "EasyTone" implies, to persuade consumers that its EasyTone line of shoes will purportedly lead to the physiological benefits described above, without any further changes in diet or exercise routine by the user.

46.     In fact, Reebok implicitly instructs consumers that a gym is not necessary, because its shoes allow users to improve their hamstring, calf and gluteus maximus muscles "just by walking."

47.     Reebok also disseminated deceptive claims about EasyTone during Reebok-

sponsored web programs such as *The Daily Dish*, a fitness program featured on www.sheknows.com, which is available on YouTube.  At the start of that program, viewers are informed, "today's *Daily Dish* is brought to you by Reebok EasyTone shoes, with balance pods that work your leg and glute muscles with every step, *EasyTone lets you take the gym with you.*" YouTube, http://www.youtube.com/watch?v=HAkRVEL_ijU&feature=related (last visited Jan. 7, 2011) (emphasis added).

48.    Reebok has bolstered consumers' confidence in these assertions by claiming via its website that "[w]e have wear-tested EasyTone with hundreds of people over the past two years resulting in more than 20,000 hours of data."  *See* ¶33 (above).

49.    Plaintiff cannot, without discovery, know the precise details of the research study Reebok touts on its website.  Plaintiff, however, is informed and believes, and thereon alleges, that the study was medically, statistically, and scientifically unsound.  Indeed, *The Wall Street Journal* has noted that the study Reebok touts to prove its claim that electrical activity in the butt muscles are improved by 28%, while electrical activity was 11% greater for the hamstring and calf muscles while wearing EasyTone shoes, was supported by only five test subjects, and the test involved only 500 steps.  In the article, Reebok also acknowledged that "the effect may diminish as wearers get used to the shoes," which further undermines Reebok's claims about the benefits of its EasyTone footwear.  *See* Laura Johannes, *Shoes that Rock Your Muscles, The Wall Street Journal* (Sep. 15, 2009), *available at* http://online.wsj.com/article/NA_WSJ_PUB:SB10001424052970203278404574413002408468102.html (last visited Jan. 7, 2011).

50.    Further, Plaintiff is informed and believes, and thereon alleges, that the research study upon which Reebok relies has not been subjected to traditional scientific scrutiny, in that it

16

was not conducted by impartial, double-blinded third parties, and was not subjected to peer review or other methods traditionally used by the scientific community to ensure accurate results. Rather, the study was commissioned by Reebok and, from its inception, has been nothing more than a marketing tool.

51.     Further, studies conducted on previous (but similarly designed) models of rocker-bottom shoes have found that those shoes do *not* have the benefits Defendant claims here.  *See* ¶¶ 56-61 (below).

52.     As noted above, with respect to all of Reebok's labeling and advertising statements concerning its EasyTone footwear – including those referenced above – although the wording may vary from one statement to another, all of Reebok's statements about its EasyTone footwear convey the same message: that Reebok's EasyTone shoes provide increased muscle activation over traditional footwear and thus provide increased muscle toning and attendant benefits.

53.     Reebok's underlying message is the primary selling point for EasyTone shoes. The name of the shoe itself – EasyTone – underscores this point.

***Scientific Rejection of Reebok's Increased Muscle Activation Claims***

54.     Despite Reebok's self-serving assessment of the increased muscle activation effect of its EasyTone footwear, walking in Reebok's EasyTones does not provide the promised physiological benefits and provides no greater amount of muscle activation or exercise response than walking in traditional footwear.

55.      Independent scientists who have spoken on the issue have verified that *none* of the benefits promised by Reebok are actually realized by the consumer.  In fact, doctors have warned that these types of shoes may cause injuries by changing a person's gait or way of

walking.

56.     Two studies funded by the American Council on Exercise by the Departments of Physical Therapy and Exercise and Sports Science of the University of Wisconsin-La Crosse compared exercise response rates and muscle activation rates from walking in three popular varieties of toning shoe (referred to in the study as "fitness shoes"), including Reebok's EasyTone footwear, against walking in traditional footwear.

57.     One study "found no evidence that walking in fitness shoes had any positive effect on exercise heart rate, oxygen consumption, or caloric expenditure compared to walking in a regular running shoe." Pocari Report, p.11.

58.     The other study found "no significant differences in muscle activation levels for any of the muscles tested between any of the shoe conditions."  The "muscles tested" included muscles from the buttocks (gluteus maximus), calf (gastrocnemius) and hamstring (biceps femoris) muscle groups.  Pocari Report, p. 12.

59.     The University of Wisconsin researchers' report concluded that "wearing so-called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe. Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone more than wearing a regular running shoe."  Pocari Report, p. 12.

60.     The American Council on Exercise publicized this study on its website through a news      article      released      in      August      2010,      available      at http://www.acefitness.org/certifiednewsarticle/720/will-toning-shoes-really-give-you-a-better-body/, last visited Jan. 7, 2011.

61.     As the article by the American Counsel for Exercise concluded:

> "Don't buy these shoes because of the claims that you're going to tone your butt more or burn more calories.  That's absolutely wrong," says Porcari.
>
> Then how do researchers account for the anecdotal evidence (found on blogs, etc.) from those who wear the shoes and claim their muscles get sore, which must mean the shoes are working?
>
> "Do you feel different when you're wearing these shoes?  Of course you do because you're walking on probably an inch worth of cushioning," explains Porcari.  "They feel different, and that's why when people first wear them they're probably going to be sore because you're using different muscles.  But if you wear any sort of abnormal shoes that you're not used to wearing, your muscles are going to get sore.  ***Is that going to translate into toning your butt, hamstrings and calves? Nope.***  Your body is just going to get used to it."

*Id.* (emphasis added).

62.     As doctors have indicated, Reebok's EasyTone footwear does *not* provide the benefits claimed and also they have significant drawbacks, such as being unsuitable, or even dangerous, for certain users.

63.     In fact, doctors have said that because Reebok's EasyTone footwear is designed to constantly challenge the user's balance, they are unsuitable for users with flat feet, or those who have pre-existing difficulties maintaining their balance.  Additionally, doctors have said that consumers who are more prone to injury in areas that are responsible for maintaining balance (such as the hamstring or ankle) will exacerbate that risk by using Reebok's EasyTone footwear.

***Despite the Falsity of its Claims, EasyTone***
***Footwear has been a "huge success for Reebok"***

64.     Even though walking in Reebok EasyTones offers no greater benefit in toning or muscle activation than walking in traditional (and lower-priced) footwear, EasyTone footwear has been a huge commercial success for Reebok.

65.     For example, Reebok's parent company's Chief Executive Officer, Herbert Hainer, noted in the adidas Group's 2009 annual report that:

> At Reebok, after four years of hard work, we are finally seeing the first real commercial successes from our product and creative efforts to reposition the brand.  We are leading the industry in the emerging toning category which experts are tipping as the next billion dollar category.  Reebok has made a big statement here with the introduction of EasyTone™.  In 2009 we over-achieved our sales target three-fold, and we expect to sell several million pairs of toning footwear in 2010.

adidas 2009 Annual Report, p. 19.

66.     The adidas Group further noted that, "Building on the huge success of EasyTone in 2009, Reebok will launch an integrated marketing campaign around the world in 2010 under the motto of 'ReeTone'." *Id*. at p. 70.

67.     The adidas Group further noted that it expects "to sell several million pairs of toning products in 2010." *Id*. at p. 95.

68.     At an average price of close to $100 per pair, Reebok's representation means that it has sold, or planned to sell, hundreds of millions of dollars worth of its EasyTone shoes in 2010 alone.

69.     As a result of Reebok's false, deceptive, and/or misleading marketing and advertising efforts, Reebok has been able to sell its EasyTone footwear to consumers for a price premium over traditional footwear.

## V.   CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All consumers in the United States who purchased Reebok's EasyTone footwear from the time of their market introduction through the present day (the "Class").

Excluded from the Class are Reebok and its subsidiaries and affiliates; all persons who make a

timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.  Moreover, this Complaint does not assert, and is not intended to assert,  personal injury claims, or any claims for  damages therefrom.

71.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72.     **Numerosity – Fed. R. Civ. P. 23(a)(1)**.  The members of the Class are so numerous that individual joinder of all Class members is impracticable.  Plaintiff is informed and believes that there are at least thousands of purchasers of Reebok EasyTone footwear in the United States who have been damaged by Reebok's conduct, as alleged herein.  The precise number of Class members and their addresses is unknown to Plaintiff, but may be ascertained from Reebok's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

73.     **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  Even though all Class members may not have seen the exact same advertising and promotional materials for Reebok's EasyTone footwear:  (a) the same false and misleading claim of "increased muscle activation" at the heart of this action was present in all of the advertising and promotional materials referenced herein; and (b) the false claims at issue appeared on a tag attached to every pair of EasyTones purchased by Class members and/or on the product's packaging. Furthermore, common questions of law and fact

include, but are not limited to:

    a.  Whether Reebok has been unjustly enriched as a result of the conduct complained of herein;

    b.  Whether Reebok engaged in false, misleading, and/or deceptive labeling, advertising, marketing and/or promotion of its EasyTone footwear;

    c.  Whether Reebok engaged in unfair or deceptive acts or practices and/or unfair methods of competition in trade or commerce in violation of the applicable laws;

    d.  Whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount; and

    e.  Whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to restitution.

74.    **Typicality – Fed. R. Civ. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described above, were subject to Reebok's false, deceptive, and/or misleading statements, including false, deceptive, and/or misleading claims that accompanied each and every pair of EasyTone footwear sold.

75.    **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)**.  Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and her counsel.

76.    **Superiority – Fed. R. Civ. P. 23(b)(3)**.  A class action is superior to any other

available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Reebok, so it would be impracticable for Class members to individually seek redress for Reebok's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## V.  CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment

77.  Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

78.  Plaintiff and the other Class members conferred a benefit upon Reebok, in the form of the excess prices they paid for Reebok EasyTone footwear over and above the actual value of the product.

79.  Reebok had an appreciation or knowledge of the excess prices paid for its EasyTone footwear by Plaintiff and the other members of the Class, as demonstrated by the fact that Reebok's EasyTone footwear offers no benefits not available from traditional footwear costing substantially less and unaccompanied by such toning claims.

80.  Reebok's acceptance or retention of these benefits is inequitable under the

circumstances as outlined above.

81.     Plaintiff, on behalf of herself and the other members of the Class, seek restitution or, in the alternative, imposition of a constructive trust on the funds inequitably received and retained.

## COUNT II
### Untrue and Misleading Advertising under G.L. c. 266 § 91

82.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

83.     Reebok's labeling, advertising, promotion, and marketing of its EasyTone footwear is untrue, deceptive, and misleading, in violation of G.L., c. 266, § 91.

84.     At all times relevant to this action, Reebok knew, or could, upon reasonable investigation, have ascertained that its labeling, advertising, marketing, and promotion of its EasyTone footwear was untrue, deceptive, and misleading.

85.     Reebok's untrue, deceptive and misleading labeling, advertising, marketing and promotion of its EasyTone footwear has continued throughout the Class Period, and is continuing as of the present date.

86.     As purchasers of EasyTone footwear who were injured by Reebok's false and misleading advertising (in that Plaintiff and the other Class members purchased a product that did not conform to the "increased muscle activation" representations made about it by Defendant), Plaintiff is entitled to and brings this class action to seek all available remedies under G.L. c. 266, § 91, including injunctive relief.  The injunctive relief would include an Order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## COUNT III
### Unfair and Deceptive Conduct in Violation of M.G.L., c. 93A, § 2

24

87.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

88.     Reebok's conduct, as alleged herein, constitutes unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of M.G.L. c. 93A, § 2 and the regulations promulgated thereunder, including without limitation, 940 C.M.R. §§ 3.02 (2), 3.05(1) and (2).

89.     Reebok's unlawful conduct includes its false and misleading statements, representations, and depictions in its labeling, marketing and advertising for its EasyTone footwear, as alleged in greater detail above.  Such conduct injured Plaintiff and each of the other Class members, in that they paid more for the falsely advertised product they purchased than they would have paid for traditional footwear, or would have not purchased Reebok's EasyTone footwear at all.

90.     Alternatively, even in rare instances where Class members did not pay higher prices for their EasyTone footwear than they would have paid for traditional footwear at the time of their purchase, those Class members were injured in that the EasyTones that they purchased were and continue to be, due to the false advertising, worth less than the amounts they paid for them at the time of purchase.

91.     Reebok's unfair or deceptive acts or practices, as alleged herein, were willful or knowing violations of M.G.L. c. 93A, § 2, within the meaning of M.G.L. c. 93A, § 9(3).

92.     On November 18, 2010, Plaintiff served Reebok with a demand letter, in accordance with M.G.L., c. 93A, § 9(3).  The demand letter explained in detail the nature of the unfair or deceptive acts or practices, the injuries suffered by Plaintiff and the other members of the Class she seeks to represent, as well as demanding compensation for those injuries and other relief.  A copy of the demand letter is annexed hereto as Exhibit 2.

93.     In response to that letter, Reebok has failed and refused to make a reasonable offer of relief.

94.     Plaintiff and the other members of the Class have been injured by Reebok's unfair or deceptive acts or practices and unfair methods of competition.

95.     Pursuant to M.G.L. c. 93A, §§ 9(3) and 9(4), Plaintiff and each of the other members of the Class are entitled to recover double or treble the amount of their actual damages, or statutory damages, whichever is greater, plus their reasonable attorneys' fees and the costs of this action.

96.     Plaintiff and the other members of the Class are also entitled to injunctive relief in the form of an order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## VI.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court order the following relief:

A.      An Order certifying the Class as requested herein;

B.       An Order awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the other members of the proposed Class;

C.       An Order awarding equitable relief, including: enjoining Defendant from continuing the unlawful false advertising practices as set forth herein, directing Defendant to retrieve existing false and misleading advertising and promotional materials, directing Defendant to engage in a corrective advertising campaign, directing Defendant to identify, with Court supervision, victims of its conduct and

pay them restitution, and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D.    An order awarding the greater of actual damages (including double or treble damages) or statutory damages, as allowable by law;

E.    An Order awarding attorneys' fees and costs to Plaintiff and the other members of the Class; and

F.    Such other and further relief as may be just and proper.

## VII.   JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:   January 25, 2011

Respectfully submitted,

**GILMAN AND PASTOR, LLP**

/s/ David Pastor
David Pastor (BBO No:  391000)
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts  02110
Telephone:  617-742-9700
Facsimile: 617-742-9701
dpastor@gilmanpastor.com

***Counsel for Plaintiff Sandra Altieri and Plaintiffs' Proposed Liaison Counsel***

27

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
ADAM J. LEVITT
EDMUND S. ARONOWITZ
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  312-984-0000
Facsimile:  312-984-0001
levitt@whafh.com
aronowitz@whafh.com

***Counsel for Plaintiff Sandra Altieri and One of
Plaintiffs' Proposed Interim Class Counsel***


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on January 25,

2011.


/s/ David Pastor
David Pastor