**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE REEBOK EASYTONE LITIGATION** | **Case No. 4:10-CV-11977-FDS** |
| This Document Relates to: All Actions | <u>CLASS ACTION</u> |

# <u>SETTLEMENT AGREEMENT</u>

# TABLE OF CONTENTS

**Section**                                                                                     **Page**

I.      INTRODUCTION ................................................................................................. 1

II.     DEFINITIONS..................................................................................................... 8

III.    SETTLEMENT RELIEF ................................................................................... 13

IV.     NOTICE TO THE CLASS ................................................................................ 18

V.      REQUESTS FOR EXCLUSION....................................................................... 23

VI.     OBJECTIONS TO SETTLEMENT ................................................................... 24

VII.    RELEASE AND WAIVER ................................................................................ 25

VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF
        AWARDS ........................................................................................................... 28

IX.     PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT
        AND RELATED ORDERS................................................................................. 29

X.      MODIFICATION OR TERMINATION OF THIS AGREEMENT ................... 32

XI.     GENERAL MATTERS AND RESERVATIONS............................................... 35

## TABLE OF EXHIBITS

**Document**                                                               **Exhibit Number**

Claim Form ......................................................................................................................1

Class Notice ....................................................................................................................2

Final Order .....................................................................................................................3

Final Judgment................................................................................................................4

Preliminary Approval Order ...........................................................................................5

Summary Settlement Notice ...........................................................................................6

Settlement Claim Procedures and Claim Calculation Protocol .....................................7

Notice Administrator's Affidavit.....................................................................................8

Confidentiality Agreement...............................................................................................9

Addenda to Settlement Agreement ...............................................................................10

**IT IS HEREBY STIPULATED AND AGREED**, by, between and among Plaintiffs Sandra Altieri, Cheryl Hardy and Courtney Schwartz, and Defendant Reebok International Ltd., with all terms as defined below, through their duly-authorized counsel, that the above-captioned *Sandra Altieri v. Reebok International Ltd.*, 4:10-cv-11977-FDS (D. Mass.) Action, and the matters raised therein, and the matters raised in the action captioned *Courtney Schwartz and Cheryl Hardy et al. v. Reebok International, Ltd.*, 1:10-cv-12018-FDS (D. Mass.), are settled, compromised, and dismissed on the merits, and with prejudice, on the terms and conditions set forth in this Settlement Agreement and the release set forth herein, subject to the approval of the Court.

## I.   INTRODUCTION

A.     There are five (5) class actions pending against Reebok alleging that Reebok engaged in untrue and deceptive advertising promotion and marketing practices associated with its EasyTone shoes.  Those actions are:  (i) *Sandra Altieri v. Reebok International Ltd.*, 4:10-cv-11977-FDS (D. Mass.); (ii) *Courtney Schwartz and Cheryl Hardy, et al. v. Reebok International Ltd.*, 1:10-cv-12018-FDS (D. Mass.); (iii) *Sandrine Cassidy, et al. v. Reebok International Ltd., et al.* 2:10-cv-09966-AHM-FFM (C.D. Cal.); (iv) *Patty Tomlinson v. Reebok International Ltd.*, CV11-122-6 (Arkansas Circuit Court, Washington County)[1]; and (v) *Debbie Murphy et al v. Reebok International Ltd.*, 60CV11-4092 (Arkansas Circuit Court, Pulaski County).[2]  The complaints filed in each of these respective actions allege similar factual predicates, and each alleges similar claims, including unjust enrichment and consumer protection violations.

---

[1] This case was removed to the Western District of Arkansas on February 14, 2011 and remanded to Washington County, Circuit Court on May 25, 2011.

[2] This case was removed to the Eastern District of Arkansas on March 11, 2011 and remanded to Pulaski, Circuit Court on April 22, 2011.

Reebok's marketing campaign relating to the toning shoes is presently the focal point of the class action complaints.

B.      On November 17, 2010, Plaintiff Sandra Altieri ("Altieri") filed a complaint on behalf of a putative class, in a lawsuit captioned *Altieri v. Reebok International Ltd.* (4:10-cv-11977-FDS) in the United States District Court for the District of Massachusetts.   In her complaint, Ms. Altieri alleged, among other things, that she purchased EasyTone footwear in the United States (the "*Altieri Action*").   Plaintiff Altieri filed her action on behalf of herself and others similarly situated and sought to certify a class defined as "[a]ll consumers in the United States who purchased Reebok's EasyTone footwear from the time of its market introduction in June 2009 through the present day."   Plaintiff Altieri's counts included violations of Massachusetts' Untrue and Misleading Advertising Statute (G.L. c. 266 § 91), as well as a claim for common law unjust enrichment.   Plaintiff Altieri seeks compensatory damages, declaratory relief, restitution, attorneys' fees and costs, as well as any relief the court deems just and proper.

C.      At about the same time as the filing of the *Altieri Action*, another putative class action captioned *Schwartz and Hardy v. Reebok International Ltd.* (1:10-cv-12018-FDS) was filed in the United States District Court for the District of Massachusetts (the "*Schwartz Action*"). Plaintiffs in the *Schwartz Action* also filed their action "on behalf of themselves and all others similarly situated consisting of all persons in the United States who purchased a pair of EasyTone shoes since the shoes were launched in March 2009 until the final disposition of [the] case."   Plaintiffs' allegations were identical to those in the *Altieri Action* and included violations of Massachusetts' Untrue and Misleading Advertising Statute (G.L. c. 266 § 91) as well as a claim for common law unjust enrichment.   The *Schwartz Action* also seeks compensatory

damages, declaratory relief, statutory pre-judgment interest, restitution, attorneys' fees and costs, as well as any other relief the court deems just and proper.

D.      Amended class action complaints were filed in both the *Altieri Action* and the *Schwartz Action* on January 25, 2011.  The amended complaints which were substantively identical to one another, re-alleged Reebok's violations of Massachusetts' Untrue and Misleading Advertising Statute (G.L. c. 266 § 91), asserted claims for common law unjust enrichment, and added a claim for Reebok's unfair and deceptive conduct in violation of M.G.L., c. 93A, §§ 2 and 9.

E.      Reebok filed its Answers to both the *Altieri* and *Schwartz* amended complaints on February 14, 2011.  Reebok expressly denied and continues to deny any and all wrongdoing alleged in the filed actions, including, but not limited to, the *Altieri* and *Schwartz Actions*, and neither admits nor concedes any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in these actions.

F.      The *Altieri* and *Schwartz* Actions are pending before Judge F. Dennis Saylor IV in the United States District Court for the District of Massachusetts.  These actions were consolidated and certain of Plaintiffs' attorneys in these actions were appointed Interim Class Counsel and Plaintiffs' Liaison Counsel on April 1, 2011, which was entered on the docket, but not provided with a docket number.  The *Altieri Action* and the *Schwartz Action* are hereinafter referred to as the "Actions."

G.      On November 24, 2010, plaintiff Sandrine Cassidy filed a complaint on behalf of a putative class in the Superior Court of California, Los Angeles County captioned: *Sandrine Cassidy v. Reebok International Ltd.; and Does 1-50, inclusive* (the "*Cassidy Action*").  The *Cassidy Action* was filed on behalf of the named plaintiff and "all others similarly situated, and

the general public"[3] and alleged that Ms. Cassidy purchased EasyTone shoes and further alleged: (1) Violations of Unfair Competition Law, California Business and Professions Code Sections 17200 *et seq.*; (2) Violations of Unfair Competition Law, California Business and Professions Code Sections 17500; (3) Violations of the Consumers Legal Remedies Act, California Civil Code Sections 1750 *et seq.*; (4) Breach of Express Warranty; and (5) Unjust Enrichment. Plaintiff Cassidy sought damages including individual restitution, declaratory relief, reasonable attorneys' fees and costs, statutory pre-judgment interest and any relief the court deems just and proper.   The *Cassidy Action* was removed to the United States District Court for the Central District of California on December 28, 2010 and assigned civil action number 2:10-cv-09966-(AHM-FFM).   Reebok filed a Motion to Transfer Venue to the United States District Court for the District of Massachusetts on January 14, 2011.   The court denied Reebok's transfer motion on April 4, 2011.   On January 19, 2011, Reebok filed a motion to dismiss the *Cassidy* action, pursuant to Federal Rule of Civil Procedure 12(b)(6), based on plaintiffs' failure to state a cause of action or sufficiently plead the allegations in the complaint.   The motion to dismiss was taken off calendar because plaintiff in the *Cassidy Action* and Reebok agreed to allow plaintiff to file a first amended complaint and allow Reebok to answer it.   Plaintiff in the *Cassidy Action* filed a first amended complaint on April 25, 2011, which sought certification of a California-only class, and Reebok answered it on May 11, 2011, denying the allegations and stating a number of affirmative defenses.   Plaintiff in *Cassidy* filed a motion for class certification on June 8, 2011, and an amended motion for class certification on June 14, 2011.   The *Cassidy* Court set a

---

[3]  This action was originally filed as a nationwide class action, but was re-filed as a statewide class action on April 21, 2011.  Reebok filed its answer to the amended complaint on May 11, 2011.

briefing schedule with respect to the motion for class certification.  The *Cassidy* Court granted Reebok's and plaintiff's stipulation to defer the class certification decision.

H.     A fourth putative class action, captioned *Patty Tomlinson v. Reebok International Ltd.* (the "*Tomlinson Action*") was filed on January 13, 2011 in the Circuit Court of Washington County, Arkansas (Case No. CV11-122-6).  The *Tomlinson Action* was filed on behalf of "[a]ll Arkansas residents who purchased Reebok's EasyTone shoes in the 5 years preceding the date of filing of [the] Complaint."  Plaintiff alleged, among other things,  that she and the class members purchased EasyTone shoes and further alleged: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Fitness for Particular Purpose; (3) Breach of Implied Warranty of Merchantability; (4) Violations of Arkansas Deceptive Trade Practices Act §§ 4-88-107(a)(1); and (5) Unjust Enrichment.  Plaintiff sought monetary damages, prejudgment interest, attorneys' fees and costs as well as any relief the court may deem just and proper. Reebok removed the action to the United States District Court for the Western District of Arkansas on February 14, 2011.  The *Tomlinson Action* was remanded to the Circuit Court of Washington County on May 25, 2011.

I.     A fifth action, captioned *Debbie Murphy v. Reebok International Ltd*., was filed on behalf of a putative class on February 1, 2011 in the Circuit Court of Pulaski County, Arkansas (Case No. 60 cv- 2011 0492) (the "*Murphy Action*").  Ms. Murphy filed her action on behalf of "[a]ll Arkansas residents that purchased Reebok's Toning Shoe products and alleged, *inter alia,* that she purchased a pair of EasyTone shoes and further alleged: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Fitness for Particular Purpose; (3) Breach of Implied Warranty of Merchantability; (4) Violations of Arkansas Deceptive Trade Practices Act §§ 4-88-107(a)(1); and (5) Unjust Enrichment.  Plaintiff Murphy filed an amended complaint on

February 22, 2011.[4] Plaintiff sought monetary damages, prejudgment interest, attorneys' fees and costs as well as any relief the court may deem just and proper. Reebok removed the *Murphy* action to the United States District Court for the Eastern District of Arkansas on March 7, 2011. The case was remanded to the Circuit Court of Pulaski County on April 22, 2011.

J.      Counsel for plaintiffs in the *Cassidy Action, Tomlinson Action, and Murphy Action* have agreed to support this Settlement and the terms in the Settlement Agreement, as indicated in the Addenda, which are attached hereto as Exhibit 10.

K.      After commencement of the Actions and the other actions and during the litigation and settlement negotiations, Class Counsel conducted a thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the claims and potential claims to determine the strength of both defenses and liability sought in the Actions.

L.      Beginning in January, 2011, Reebok produced to Plaintiffs, through Class Counsel, discovery, including, but not limited to, documents, access to electronic databases maintained by Reebok and access to key personnel at Reebok. Plaintiffs and Class Counsel have thoroughly reviewed the documents, searched and reviewed the materials available electronically and conducted detailed interviews of witnesses. In particular, Reebok produced documentation and/or provided electronic access to Class Counsel regarding Eligible Shoes and Eligible Apparel in the following categories: (i) product design, initiative and development; (ii) scientific studies and research; (iii) marketing, advertising, media and public relations; (iv) sales and

---

[4] Plaintiff Murphy's amended complaint did not substantively modify the original complaint, nor did it add additional allegations thereto. Rather, it merely included stipulations by plaintiff and her counsel that were omitted from the original complaint. The stipulations alleged that plaintiff and her counsel would not accept any damages award in excess of $75,000 individually or $5,000,000 in the aggregate.

accounting records; (v) e-mail correspondence kept by 30 Reebok custodians; and (vi) three Reebok databases containing live sales, marketing, advertising, accounting and media data.  In total, Class Counsel was given access to approximately 400,000 documents encompassing over 50 GB of data, in addition to access to three live Reebok databases consisting of over 215 GB of data and hundreds of thousands of data assets.  In addition, over the course of three days, Class Counsel conducted interviews of primary Reebok corporate witnesses who have been involved with the Eligible Apparel and Eligible Shoes to address the following subjects: (i) sales and marketing; (ii) finance; (iii) innovation technology; and (iv) document collection and retention.

M.     On September 28, 2011, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief ("FTC Complaint") against Reebok and its toning shoes alleging violations of the Federal Trade Commission Act and specifically 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce," and 15 U.S.C. § 52, which prohibits the dissemination of any false advertisement in or affecting commerce.  FTC Complaint ¶¶ 20, 21.  A Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Stipulated Order") was entered into between Reebok and the FTC on the same date in *Federal Trade Commission v. Reebok, International, Ltd. d/b/a Reebok* (N.D. Ohio).  This Settlement and the Stipulated Order are the products of work performed by Class Counsel in conjunction with the FTC, and Class Counsel and the FTC have coordinated these resolutions to maximize the settlement consideration under this Settlement, including the money to be paid to Class Members.  As part of the resolution reached in this Settlement Agreement and in the Stipulated Order, the FTC provided substantial input and guidance in the contents and format of the notices, notice plan, Claim Form and Protocol, all of which are attached to the Settlement Agreement, as well as the

ultimate design of the settlement relief program described in Section III of this Settlement Agreement.

N.      Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel, on behalf of the named plaintiffs in the Actions and the other members of the proposed Class, have agreed to settle the Actions pursuant to the provisions of this Agreement, after considering, among other things:  (1) the substantial benefits to Plaintiffs and the other Class Members under the terms of this Agreement; (2) the risks, costs and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Agreement promptly in order to provide effective relief to Plaintiffs and the other Class Members.

O.      Reebok expressly denies any wrongdoing alleged in the pleadings and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Actions and/or any other actions.  Even though Reebok expressly denies any wrongdoing, Reebok considers it desirable for these cases to be settled and dismissed, because this Settlement will finally put Plaintiffs' claims and the underlying matters to rest and will avoid the substantial expense, burdens, and uncertainties associated with the continued litigation of these claims and cases.

## II.   **DEFINITIONS**

A.      As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.      "Actions" means *Altieri v. Reebok International Ltd.*, 4:10-cv-11977-FDS (D. Mass.) and *Courtney Schwartz and Cheryl Hardy, et al. v. Reebok International Ltd.*, 1:10-cv-12018-FDS (D. Mass.).

2.      "Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments, which are the settlement (the "Settlement").

3.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel from Reebok to compensate all Plaintiffs' Counsel for their fees and expenses in connection with the Actions and the Settlement, as described in Section VIII of this Agreement (below).

4.      "Claim" means the claim of a Class Member or his or her representative submitted on a Claim Form as provided in this Agreement.

5.      "Claimant" means a Class Member who has submitted a Claim.

6.      "Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Agreement.

7.      "Claim Period" means the time period in which Class Members may submit a Claim Form for review to the Class Action Settlement Administrator.  The Claim Period shall run for one hundred eighty (180) days from the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

8.      "Claim Process" means that process for submitting Claims described in this Agreement.

9.      "Class Action Settlement Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Rust

Consulting shall be retained to implement the claims and Settlement requirements of this Agreement, subject to the Court's approval.

10.     "Class" means all persons or entities that, during the Class Period, purchased any and all Eligible Shoes and/or Eligible Apparel from Reebok and/or its authorized retailers and wholesalers including, without limitation, Reebok U.S. Retailers, Reebok Concept Stores, Reebok.com, Reebok Outlets and/or other third-party retailers or wholesalers.  Excluded from the Class are:  (a) Reebok's Board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the Eligible Apparel and/or Eligible Shoes primarily for the purpose of resale; (c) any claims for personal injury relating to the use of Eligible Shoes and/or Eligible Apparel; (d) distributors or re-sellers of Eligible Shoes and/or Eligible Apparel; (e) the judge and magistrate judge and their immediate families presiding over the Actions; (f) governmental entities; and (g) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Agreement.

11.     "Class Member" means a member of the Class.

12.     "Class Counsel" means:  Timothy G. Blood, of Blood Hurst & O'Reardon, LLP; Janine L. Pollack, of Milberg LLP; and Adam J. Levitt, of Wolf Haldenstein Adler Freeman & Herz LLC.

13.     "Class Notice" means a notice substantially in the form attached hereto as Exhibit 2.

14.     "Class Period" means the period from December 5, 2008 up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

15.     "Court" means the United States District Court for the District of Massachusetts.

16.     "Eligible Apparel" means Reebok's EasyTone and other applicable Reebok toning apparel, purchased as new by Class Members during the Class Period, which are EasyTone Capri, EasyTone Pants, EasyTone Shorts, EasyTone Long Bra Top, EasyTone Sleeveless Shirt, and/or EasyTone Short Sleeve Top.

17.     "Eligible Shoes" means Reebok's EasyTone shoes and other applicable Reebok toning shoes, purchased as new by Class Members during the Class Period, which are EasyTone, EasyTone Flip, RunTone, TrainTone, JumpTone, SimplyTone and/or SlimTone.

18.     "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Agreement as fair, reasonable, and adequate.

19.     "Final Order and Final Judgment" means the Court's order approving the Settlement and this Agreement, as described in Section IX.B of this Agreement, which is to be substantially in the forms attached hereto as Exhibits 3 and 4, respectively.

20.     "Final Settlement Date" means the date on which the Final Order and Final Judgment approving this Agreement becomes final.  For purposes of this Agreement:

> a.     if no appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or
>
> b.     if any appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review,

have been finally disposed of in a manner that affirms the Final Order and Judgment; or

c.      if the Class Counsel and Reebok agree in writing, "Final Settlement Date" can occur on any other agreed date.

21.      "Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Jeanne Finegan of the Garden City Group, Inc. shall be retained to implement the notice and related requirements of this Agreement.

22.      "Parties" means Plaintiffs and Reebok, collectively, as each of those terms is defined in this Agreement.

23.      "Plaintiffs" means Sandra Altieri, Courtney Schwartz and Cheryl Hardy.

24.      "Plaintiffs' Counsel" means counsel for the Plaintiffs in the Actions, who are:  Blood Hurst & O'Reardon, LLP; Milberg LLP; Wolf Haldenstein Adler Freeman & Herz LLC; Gilman and Pastor, LLP; Law Office of Peter Lagorio; Bonnett, Fairbourn, Friedman & Balint, P.C.; Shepherd, Finkelman, Miller & Shah, LLP; Edgar Law Firm, LLC; Piscitelli Law Firm; Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A.; and Cuneo, Gilbert & LaDuca, LLP.

25.      "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement as outlined in Section IX.A of this Agreement and should be substantially in the form attached hereto as Exhibit 5.

26.      "Reebok" means Reebok International Ltd.

27.      "Reebok's Counsel" means Reed Smith LLP.

28.     "Release" means the release and waiver set forth in Section VII of this Agreement and in the Final Order and Final Judgment.

29.     "Released Parties" means Reebok, its past, present and future parents (including but not limited to Adidas AG, and any intermediary and/or ultimate parents), officers, directors, employees, stockholders, agents, attorneys, administrators, successors, suppliers, distributors, reorganized successors, spin-offs, assigns, holding companies, related companies, subsidiaries, affiliates, joint-ventures, partners, members, divisions, predecessors, authorized retailers, and wholesalers of Eligible Shoes and/or Eligible Apparel for resale, including, without limitation, Reebok U.S. Retailers, Reebok Concept Stores, Reebok.com and Reebok Outlets, as well as other third-party retailers or wholesalers of the Eligible Shoes and/or Eligible Apparel.

30.     "Settlement Claim Procedures and Claim Calculation Protocol" means the protocol attached hereto as Exhibit 7.

31.     "Summary Settlement Notice" means the Summary Class Notice for publication substantially as attached hereto as Exhibit 6.

B.     Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C.     The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.   <u>SETTLEMENT RELIEF</u>

Settlement relief shall consist of two primary components:  (1) refunds to Class Members who submit valid Claims; and (2) Reebok's conduct changes relating to its marketing and advertising of its toning shoes and apparel.

A.     Relief Amount:

1.     As part of the Consent Judgment entered into between Reebok and the FTC, Reebok shall be depositing $25 million (the "Escrowed Funds") in escrow to be held by Rust Consulting, which shall be the "Escrow Agent".

2.     The Escrowed Funds may be used for the payment of:  (a) the costs and expenses associated with disseminating the notice, including, but not limited to, the Class Notice and the Summary Settlement Notice, to the Class; (b) the costs and expenses associated with claims administration; and (c) timely, valid, and approved Claims submitted by Class Members pursuant to the Claim Process.

B.     Claim Form Submission and Review:

1.     Class Members may submit a Claim to the Claim Process during the Claim Period and the Class Action Settlement Administrator shall review and process the Claim pursuant to the Settlement Claim Procedures and Claim Calculation Protocol, which is attached hereto as Exhibit 7.  As part of the Claim Process, Class Members shall be eligible for the relief provided in this Agreement, provided Class Members complete and timely submit the Claim Form, which shall be included with the Class Notice, to the Class Action Settlement Administrator within the Claim Period.

2.     As further specified in the Settlement Claim Procedures and Claim Calculation Protocol, the Claim Form shall advise Class Members that, upon request and under certain enumerated circumstances, that the Class Action Settlement Administrator has the right to request verification of the purchase of Eligible Apparel and/or Eligible Shoes, including, but not limited to, receipt(s) or other documentation demonstrating purchase of any and all of the Eligible Shoes and/or Eligible Apparel during the Class Period.  If the Class Member does not

timely comply and/or is unable to produce documents to substantiate and/or verify the information on the Claim Form and the Claim is otherwise not approved, the Claim shall be disqualified.

       3.     The Class Action Settlement Administrator shall provide periodic updates to the FTC, Class Counsel and Reebok regarding Claim Form submissions beginning not later than one week before the Fairness Hearing date and continuing on a monthly basis thereafter.

       4.     The Class Action Settlement Administrator shall begin to pay timely, valid, and approved Claims not before ten (10) days after the close of the Claim Period, as long as this period is after the issuance of the Court's Final Order and Final Judgment approving the Settlement, which, at Reebok's discretion, can occur prior to the occurrence of the Final Settlement Date.  Not later than one hundred twenty (120) days after either the occurrence of the Final Settlement Date or the close of the Claim Period, at Reebok's sole discretion, the Class Action Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process, provided, further however, that Reebok may, at its sole discretion, commence this payment period after final approval of the settlement by the Court, but before the attainment of the Final Settlement Date.

       5.     The relief to be provided to eligible Class Members shall be as follows:

| Item | Initial Amount | Maximum |
| --- | --- | --- |
| All Eligible Shoes | $50.00 | Not more than $100.00 |
| EasyTone Capri<br><br>EasyTone Pants | $40.00 | Not more than $80.00 |
| EasyTone Shorts<br>EasyTone Long Bra Top<br>EasyTone Sleeveless Shirt<br>EasyTone Short Sleeve Top | $25.00 | Not more than $50.00 |

Applicable sales taxes shall not be used to calculate the relief percentages relating to the purchase of the Eligible Apparel and/or Eligible Shoes.

      C.      <u>Adjustments and Remaining Funds</u>

      1.      If the total of the timely, valid and approved Claims submitted by Class Members exceeds the available relief, minus any covered fees and costs, each eligible Class Member's award shall be reduced on a <u>pro rata</u> basis.

      2.      If the total of the timely, valid and approved claims submitted by Class Members is less than the available relief, minus any covered fees and costs, each eligible Class Member's award shall be increased on a <u>pro rata</u> basis, with a maximum increase of up to, but not more than, double the initial amount as set forth in section III.B.5 above, not including any applicable sales taxes.

      3.      If there are any funds remaining from the claim program, including, but not limited to, uncashed distributions made payable to eligible Class Members, any remaining funds shall be transferred to the Federal Trade Commission and will not be returned to Reebok.

      D.      <u>Conduct Changes</u>

In addition to the relief discussed above, as part of this Agreement, Reebok will agree to implement the conduct changes that are further detailed in the Stipulated Order that was entered into between Reebok and the FTC. The Stipulated Order provides, *inter alia*, the following conduct changes related to Reebok's toning footwear, EasyTone apparel and any other footwear or apparel that purports to improve or increase muscle tone, strength, or activation (collectively, the "Covered Products"). More specifically, as detailed further in the Stipulated Order, Reebok is permanently enjoined from: (i) making or assisting others in making any claims that the

Covered Products are effective in strengthening muscles or that wearing such product will result in quantified percentage or amount of muscle toning or strengthening, unless that representation is non-misleading and is supported by at least one adequate well controlled human clinical study; (ii) making or assisting others in making any other health or fitness benefit claims about the Covered Products, including, but not limited to, claims about muscle tone and/or muscle activation, unless that representation is non-misleading and Defendant possesses and relies upon competent and reliable scientific evidence to substantiate that the representation is true; and (iii) misrepresenting or assisting others in misrepresenting the existence, contents, validity, results, conclusions, or interpretations of any test, study or research relating to Reebok's toning footwear and EasyTone apparel.  Reebok is also subject to compliance monitoring and reporting, as detailed further in the Stipulated Order, including, but not limited to, having to: (i) submit additional reports within 14 days of receipt of written notice from the FTC; (ii) produce discovery upon request; (iii) permit the interview of requested persons; (iv) notify, for a period of three years of the date of entry of the Stipulated Order, the FTC of any changes in the corporate structure of Reebok that would result in the emergence of a successor corporation; (v) submit a report to the FTC within 180 days of the entry of the Stipulated Order stating compliance with the Stipulated Order; (vi) keep certain specified records for five years from the date of the entry of the Stipulated Order; (vii) deliver, for a period of three years from the date of entry of the Stipulated Order, the Stipulated Order to certain enumerated persons; (viii) notify not later than 15 days after entry of the Stipulated Order certain enumerated parties of the notice attached to the Stipulated Order; (ix) acknowledge receipt of the Stipulated Order within seven days of the receipt of the Stipulated Order; and (x) notify the FTC of the filing for bankruptcy within 15 days of filing.

IV.     **NOTICE TO THE CLASS**

        A.     Duties of the Class Action Settlement Administrator and the Notice Administrator

        1.     The Parties shall jointly recommend and retain Rust Consulting Inc. to be the Class Action Settlement Administrator and The Garden City Group, Inc. to be the Notice Administrator to help implement the terms of this Agreement. Following the Court's preliminary approval of this Agreement and the Court's appointment of the proposed Class Action Settlement Administrator and the proposed Notice Administrator, the Notice Administrator shall disseminate notice to the Class as provided for in the Affidavit of the Notice Administrator, substantially in the form attached as Exhibit 8 to this Agreement, as specified in the Preliminary Approval Order and this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution.

        2.     The Notice Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Class Notice; (b) arranging for the publication of the Summary Settlement Notice; (c) handling returned mail not delivered to Class Members; (d) attempting to obtain updated address information for any Class Notice returned without a forwarding address; (e) making any additional mailings required under the terms of this Agreement; (f) responding to requests for Class Notice; (g) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (h) forwarding written inquiries to Class Counsel or their designee for a response, if warranted; (i) establishing a post office box for the receipt of any correspondence; (j) responding to requests from Class Counsel and/or Reebok's Counsel; (k) establishing a web site and toll-free voice response unit with message and live operator capabilities to which Class Members may refer for information about the Actions and the

18

Settlement; and (l) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement. The Class Action Settlement Administrator shall be responsible for, without limitation, implementing the terms of the Claim Process and related administrative activities. The Notice Administrator and/or the Class Action Settlement Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Agreement.

3.     If the Class Action Settlement Administrator and/or the Notice Administrator make a material or fraudulent misrepresentation to, or conceal requested material information from, Class Counsel, Reebok, or Reebok's Counsel, then the Party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Class Action Settlement Administrator and/or the Notice Administrator, as applicable, immediately be replaced. If the Class Action Settlement Administrator and/or the Notice Administrator fail to perform adequately on behalf of Reebok or the Class, the Parties may agree to remove the Class Action Settlement Administrator and/or the Notice Administrator. The other Party shall not unreasonably withhold consent to remove the Class Action Settlement Administrator and/or the Notice Administrator, but this shall occur only after Reebok and Class Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator and/or the Notice Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

4.     The Class Action Settlement Administrator and/or the Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

5.     Not later than ten (10) days before the date of the Fairness Hearing, the Notice Administrator shall file with the Court: (a) a list of those persons who have opted out or

excluded themselves from the Settlement; and (b) the details outlining the scope, methods and results of the notice program.

      6.    The Notice Administrator shall promptly after receipt provide copies of any requests for exclusion, objections, and/or related correspondence to Class Counsel and Reebok's Counsel.

    B.    <u>Class Notice</u>:

      1.    <u>Dissemination of the Mailed Class Notice</u>

      a.    Beginning not later than five (5) business days after entry of the Preliminary Approval Order and to be substantially completed not later than forty (40) days before the Fairness Hearing and subject to the requirements of the Preliminary Approval Order, the Settlement Agreement and the Affidavit of the Notice Administrator, the Notice Administrator shall send the Class Notice by First-Class U.S. Mail, proper postage prepaid, to: (i) each reasonably identifiable Class Member's last known address reasonably obtainable from Reebok, Eligible Shoe retailers, and internal Reebok customer return profiles, which addressees shall be provided to the Notice Administrator by Reebok no later than five (5) business day after entry of the Preliminary Approval Order, subject to the existence of such information and its current possession, if at all, by Reebok; and (ii) each appropriate State and Federal official, as specified in 28 U.S.C. § 1715, and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including, but not limited to, the Due Process Clause of the United States Constitution.

b.      The Notice Administrator shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address that are received by the Notice Administrator at least thirty (30) days before the Fairness Hearing; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail copies of the Class Notice to the better addresses so found.

2.      <u>Contents of the Class Notice</u>:  The Claim Form and the Class Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibits 1 and 2, respectively, and shall advise Class Members of the following:

a.      <u>General Terms</u>:      The Class Notice shall contain a plain and concise description of the nature of the Actions, the history of the litigation of the claims, the preliminary certification of the Class, and the proposed Settlement, including information on the identity of Class Members, how the proposed Settlement would provide relief to the Class and Class Members, what claims are released under the proposed Settlement and other relevant terms and conditions.

b.      <u>Opt-Out Rights</u>:   The Class Notice shall inform Class Members that they have the right to opt out of the Settlement.  The Class Notice shall provide the deadlines and procedures for exercising this right.

c.      <u>Objection to Settlement</u>:      The Class Notice shall inform Class Members of their right to object to the proposed Settlement and appear at

21

the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

d.   <u>Fees and Expenses:</u>      The Class Notice shall inform Class Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and Expenses and individual awards to the Plaintiffs, and shall explain that Reebok will pay the fees and expenses awarded to Plaintiffs' Counsel and individual awards to the Plaintiffs in addition to amounts being made available for relief to Class Members and without reducing such relief amounts.

e.   <u>Claim Form:</u>      The Class Notice shall include the Claim Form, which shall inform the Class Member that he or she must fully complete and timely return the Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Agreement.

C.      <u>The Summary Settlement Notice</u>:   The Notice Administrator shall have the publication of the Summary Settlement Notice substantially completed no later than forty (40) days before the Fairness Hearing as described in the Affidavit of the Notice Administrator and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties.  The form of Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 6.

D.      <u>Internet Web site</u>:  The Notice Administrator shall establish an Internet website, www.reeboksettlement.com, that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The web site shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court.

E.      Toll-Free Telephone Number: The Notice Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

V.      **REQUESTS FOR EXCLUSION**

A.      Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Notice Administrator at the address provided in the Class Notice, postmarked no later than twenty (20) days before the Fairness Hearing, or as the Court otherwise may direct, and specifying that he or she wants to be excluded.  The Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel and Reebok's Counsel.  A list reflecting all requests for exclusion shall be filed with the Court by the Notice Administrator no later than ten (10) days before the Fairness Hearing.

B.      Any potential Class Member who does not file a timely written request for exclusion as provided in the preceding Section V.A shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, in the Actions, even if he or she has litigation pending or subsequently initiates litigation against Reebok relating to the claims and transactions released in the Actions.  Reebok's Counsel shall provide to the Notice Administrator, within ten (10) business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has litigation against Reebok that involves the Eligible Apparel and/or Eligible Shoes.  The Notice Administrator shall mail copies of the Class Notice to all such legal counsel.  Reebok will promptly direct the Notice Administrator to serve the Class Notice on counsel for any Class Members who subsequently initiate litigation, arbitration, or other proceedings against Reebok relating to claims alleging events occurring during the Class Period, the Eligible Apparel, the Eligible Shoes, and/or otherwise involving the Release.

23

## VI.    OBJECTIONS TO SETTLEMENT

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses, or the individual awards to Plaintiffs, must deliver to the Class Counsel identified in the Class Notice and to Reebok's Counsel, and file with the Court, no later than twenty (20) days before the Fairness Hearing, or as the Court otherwise may direct, a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objections, a statement of whether the Class Member intends to appear and argue at the Fairness Hearing, and list the Class Member's purchase(s) of either Eligible Shoes or Eligible Apparel.  Class Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof of purchase of either Eligible Shoes or Eligible Apparel.  Acceptable proof of purchase includes a cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the Eligible Shoes or Eligible Apparel.

B.      Any Class Member who files and serves a written objection, as described in the preceding Section VI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiffs.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to one of the Class Counsel identified in the Class Notice and to Reebok's Counsel, and file said notice

24

with the Court, no later than twenty (20) days before the Fairness Hearing, or as the Court may otherwise direct.

C.      Any Class Member who fails to comply with the provisions of Sections VI.A and VI.B above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Actions.

D.      Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Forms and other requirements discussed herein.

## VII.    RELEASE AND WAIVER

A.      The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Order and Final Judgment.

B.      In consideration for the Settlement benefits described in this Agreement, Plaintiffs and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties – and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Class or on behalf of any other person or entity – from any and all manner of claims, actions, causes of action, suits, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature and whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or noncontingent, whether based on federal, state or local

law, statute, ordinance, regulation, code, contract, common law, or any other source, or any

claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or

may ever have against the Released Parties in any other court, tribunal, arbitration panel,

commission, agency, or before any governmental and/or administrative body, or any other

adjudicatory body, on the basis of, connected with, arising from or in any way whatsoever

relating to the purchase of Eligible Shoes and/or Eligible Apparel during the Class Period and the

claims alleged in the complaints in the Actions, and, more particularly, but without in any way

limiting the generality of the foregoing, arising from, directly or indirectly, or in any way

whatsoever pertaining or relating to the claims alleged in the complaints in the Actions,

including, but not limited to, communications, disclosures, nondisclosures, representations,

statements, claims, omissions, messaging, design, testing, marketing, advertising, promotion,

packaging, displays, brochures, studies, manufacture, distribution, operation, performance,

functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by

the Released Parties of the Eligible Apparel and/or the Eligible Shoes; any claims for rescission,

restitution or unjust enrichment for all damages of any kind; violations of any state's deceptive,

unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent

advertising, consumer fraud and/or consumer protection statutes; any violation of the Uniform

Commercial Code, any breaches of express, implied and/or any other warranties, any similar

federal, state or local statutes, codes, damages, costs, expenses, extra-contractual damages,

compensatory damages, exemplary damages, special damages, penalties, punitive damages

and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys'

fees and costs against the Released Parties pertaining to or relating to the claims alleged in the

complaints in the Actions, notwithstanding that Plaintiffs and the Class acknowledge that they

may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Actions and/or the Release herein.

C.      Notwithstanding the language in this section and/or this Agreement, the Plaintiffs and the other members of the Class are not releasing any claims of or relating to personal injury.

D.      Plaintiffs represent and warrant that they are the sole and exclusive owner of all claims that they personally are releasing under this Agreement.  Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Actions, including without limitation, any claim for benefits, proceeds or value under the Actions, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Actions or in any benefits, proceeds or values under the Actions.  Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Actions, including without limitation, any claim for benefits, proceeds or value under the Actions, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Actions or in any benefits, proceeds or values under the Actions.

E.      Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or

27

any other fees, costs, and/or disbursements incurred by Plaintiffs' Counsel, or by Plaintiffs or the Class Members.

F.      Plaintiffs expressly understand and acknowledge, and all Class Members will be deemed by the Final Order and Final Judgment to acknowledge, that certain principles of law, including, but not limited to, Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  To the extent that anyone might argue that these principles of law are applicable, – notwithstanding that the Parties have chosen Massachusetts law to govern this Agreement – Plaintiffs hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs and all Class Members.

G.      Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

H.      Plaintiffs and Defendant hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

## VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS

A.      On behalf of Plaintiffs' Counsel, Class Counsel agrees to make and Reebok agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed $3.5 million in fees and $100,000 in expenses incurred up to the submission of their expenses to the Court prior to the Fairness Hearing, which shall be the sole aggregate

compensation paid by Reebok for all Class Counsel and Plaintiffs' Counsel representing the Class.  For any amounts for Attorneys' Fees and Expenses that are not awarded by the Court, Reebok shall revert those funds to apply to settlement relief only in the event that the amounts payable to Class Members are insufficient to pay all Claims, pursuant to Section III.C above.

B.      Class Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class, which are Class Counsel and Plaintiffs' Counsel.

C.      Reebok shall pay the entire Attorneys' Fees and Expenses awarded by the Court within thirty (30) days after the occurrence of the Final Settlement Date.

D.      Class Counsel for Plaintiffs may petition the Court for incentive awards of up to $2,500 per Plaintiff.  The purpose of such awards shall be to compensate the Plaintiffs for efforts and risks taken by them on behalf of the Class.  Any incentive awards made by the Court shall be paid by Reebok, as instructed by Class Counsel, within thirty (30) days after the occurrence of the Final Settlement Date.

E.      Reebok shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with these Actions or this Settlement Agreement, other than the amount or amounts expressly provided for in this Settlement Agreement.

## IX.    PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A.      The Parties shall seek from the Court, within fifteen (15) days after the execution of this Agreement, a Preliminary Approval Order in a form substantially similar to Exhibit 5. The Preliminary Approval Order shall, among other things:

1.     Certify a nationwide settlement-only class, approve Plaintiffs Sandra Altieri, Cheryl Hardy and Courtney Schwartz as Class Representatives and appoint Class Counsel as counsel for the class, pursuant to Fed. R. Civ. P. 23;

2.     Preliminarily approve the Settlement;

3.     Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.     Determine that the notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.     Schedule a date and time for a Fairness Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

6.     Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in the Agreement and Class Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7.     Require Class Members who wish to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

8.     Require Class Members who wish to appear to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

9.     Require attorneys representing Class Members, at the Class Members' expense, to file a notice of appearance as directed in the Agreement and Class Notice;

10.    Issue a preliminary injunction;

11.    Appoint the Class Action Settlement Administrator and/or the Notice Administrator;

12.     Authorize Reebok to take all necessary and appropriate steps to establish the means necessary to implement the Agreement;

13.     Issue a protective order requiring the execution of a Confidentiality Agreement, attached hereto as Exhibit 9, for those Class Members or their counsel that seek to review the documents produced in this Action; and

14.     Issue other related orders to effectuate the preliminary approval of the Agreement.

B.      After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the forms substantially similar to Exhibits 3 and 4, respectively. The Final Order and Final Judgment shall, among other things:

1.      Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Amended Complaints and/or Actions, and that venue is proper.

2.      Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

3.      Finally certify the Class for settlement purposes only;

4.      Find that the notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.      Dismiss the Actions with prejudice;

6.      Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

7.      Issue a permanent injunction;

8.      Authorize the Parties to implement the terms of the Agreement;

9.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Order and Final Judgment, and for any other necessary purpose; and

10.     Issue related Orders to effectuate the final approval of the Agreement and its implementation.

## X.      MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.      The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.

B.      This Agreement shall terminate at the discretion of either Reebok or the Plaintiffs, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material.  The terminating party must exercise the option to withdraw from and terminate this

Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  The Parties will be returned to their positions status quo ante.

C.      If an option to withdraw from and terminate this Agreement arises under Section X.B above, neither Reebok nor Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D.      If this Agreement is terminated pursuant to Section X.B, above, then:

1.      this Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Sections X.D herein;

2.      the Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3.      all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Reebok, Plaintiffs or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the attempted Settlement;

4.      Released Parties, as defined in Section II, above, including, without limitation, Reebok, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, the argument that the Actions may not be litigated as a class action;

5.      Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Actions including, without limitation, any argument concerning class certification, consumer fraud, and treble or other damages;

6.      neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

7.      any Settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

8.      all costs incurred in connection with the Settlement, including, but not limited to, notice, publication, and customer communications, will be paid from the Escrowed Funds.  Neither Plaintiffs nor Class Counsel shall be responsible for any of these costs or other Settlement-related costs;

9.      any attorneys' fees and expenses previously paid to Plaintiffs' Counsel shall be returned to Reebok; and

10.      notwithstanding the terms of this paragraph, if Settlement is not consummated, Plaintiffs' Counsel may include any time spent in Settlement efforts as part of any statutory fee petition filed at the conclusion of the case, and Reebok reserves the right to object to the reasonableness of such requested fees.

## XI.     GENERAL MATTERS AND RESERVATIONS

A.      The obligation of the Parties to conclude the proposed Settlement is and shall be contingent upon each of the following:

1.      entry by the Court of the Final Order and Final Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); or

2.      Reebok's payment of $25 million into the Escrowed Funds.

B.      The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this section shall not prevent Reebok from disclosing such information, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

C.      Plaintiffs and Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Plaintiffs in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiffs or Plaintiffs' Counsel in any way in this litigation should the Settlement not be achieved, and that it is to be returned if a Settlement is not concluded; provided, however, that nothing contained herein shall prohibit Plaintiffs from seeking such information through formal discovery if not previously requested through formal

discovery or from referring to the existence of such information in connection with the Settlement of this litigation.

D.      All information marked as "Confidential" provided by Reebok to Plaintiffs, Plaintiffs' Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the implementation of this Agreement, constitutes trade secrets and highly confidential and proprietary business information and shall be deemed "Confidential" pursuant to the protective orders that have been or will be entered in the Actions, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon Reebok's request,  be promptly returned to Reebok's Counsel, and there shall be no implied or express waiver of any privileges, rights and defenses.

E.      Within ninety (90) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Reebok to Plaintiffs' Counsel shall either: (i) return to Reebok's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Reebok in the Actions and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Reebok's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Reebok in the Actions and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed, provided, however, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product.  Reebok's Counsel agrees to hold all documents returned by Plaintiffs' Counsel, and any expert or other consultant or any other

individual employed by Plaintiffs' Counsel in such capacity with access to documents provided by Reebok, until six months after the distribution of the Escrowed Funds to Class Members who submitted acceptable Claim Forms.  Six months after the distribution of the Escrowed Funds to Class Members who submitted acceptable Claim Forms, the Class Action Settlement Administrator shall return all documents and materials to Reebok and/or Class Counsel that produced the documents and materials, except that it shall destroy any and all Claim Forms, including any and all information and/or documentation submitted by Class Members.

F.      Reebok's execution of this Agreement shall not be construed to release - and Reebok expressly does not intend to release - any claim Reebok may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

G.      Class Counsel represent that: (1) they are authorized by the Plaintiffs to enter into this Agreement on behalf of Plaintiffs, their respective present or past law firms and any other attorneys who have represented or who now represent Plaintiffs in these Actions with respect to the claims in these Actions; and (2) they are seeking to protect the interests of the Class.

H.      Plaintiffs represent and certify that: (1) they have agreed to serve as representatives of the Class proposed to be certified herein; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) they have read the pleadings in the Actions, including the complaint and/or the Amended Complaints, or have had the contents of such pleadings described to them; (4) they are familiar with the results of the fact-finding undertaken by Class Counsel; (5) they have been kept apprised of settlement negotiations among the Parties, and have either read this Agreement, including the exhibits annexed hereto, or have

received a detailed description of it from Class Counsel and they have agreed to its terms; (6) they have consulted with Class Counsel about the Actions and this Agreement and the obligations imposed on representatives of the Class; (7) they have authorized Class Counsel to execute this Agreement on their behalf; and (8) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiff(s) cannot represent the Class.

I.      Reebok represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of Reebok.

J.      This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Reebok's Counsel on behalf of Reebok.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

K.      This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, notwithstanding its conflict of laws provisions.

L.      Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which these Actions are pending.

M.      Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

      1.      If to Reebok, then to:

        John P. Hooper
        Reed Smith LLP
        599 Lexington Avenue
        22nd Floor
        New York, New York 10022
        Tel. 212-205-6125
        Fax 212-521-5450
        e-mail:  JHooper@ReedSmith.com

      2.      If to Plaintiffs, then to:

        Timothy G. Blood
        Blood Hurst & O'Reardon LLP
        600 B Street, Suite 1550
        San Diego, California 92101
        Tel. 619-338-1100
        Fax. 619-338-1101
        e-mail: tblood@bholaw.com

        Janine L. Pollack
        Milberg LLP
        One Penn Plaza
        New York, NY 10119
        Tel. 212-946-9376
        Fax. 212-273-4388
        e-mail: jpollack@milberg.com

        Adam J. Levitt
        Wolf Haldenstein Adler Freeman & Herz LLC
        55 West Monroe Street
        Suite 1111
        Chicago, Illinois 60603
        Tel. 312-984-0000
        Fax. 312-984-0001
        e-mail: levitt@whafh.com

N.     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this section "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

O.     The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

P.     The Class, Plaintiffs, Class Counsel, Reebok and/or Reebok's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the contra proferentem canon of construction.  All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

Q.      The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

R.      Plaintiffs expressly affirm that the allegations contained in the Amended Complaints were made in good faith and have a basis in fact, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

S.      The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

T.      The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

U.      If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

V.      The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

W.   This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY THE
PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES


BY *Sandra A Altieri*          DATE 9-17-11
SANDRA ALTIERI


BY_____          DATE_____
COURTNEY SCHWARTZ


BY_____          DATE_____
CHERYL HARDY


APPROVED AND AGREED TO BY CLASS COUNSEL


BY_____          DATE_____
TIMOTHY G. BLOOD
BLOOD HURST & O'REARDON LLP


BY_____          DATE_____
JANINE L. POLLACK
MILBERG LLP

W.     This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY THE
PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES

BY _____       DATE _____
SANDRA ALTIERI

BY _____       DATE 9-19-11
COURTNEY SCHWARTZ

BY _____       DATE _____
CHERYL HARDY

APPROVED AND AGREED TO BY CLASS COUNSEL

BY _____       DATE _____
TIMOTHY G. BLOOD
BLOOD HURST  & O'REARDON LLP

BY _Janine L. Pollack_            DATE 9-20-11
JANINE L. POLLACK
MILBERG LLP

W.     This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY THE
PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES

BY_____          DATE_____
SANDRA ALTIERI

BY_____          DATE_____
COURTNEY SCHWARTZ

BY _Cheryl Hardy_____          DATE_9/19/11_____
CHERYL HARDY

APPROVED AND AGREED TO BY CLASS COUNSEL

BY_____          DATE_____
TIMOTHY G. BLOOD
BLOOD HURST  & O'REARDON LLP

BY_____          DATE_____
JANINE L. POLLACK
MILBERG LLP

W.    This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY THE
PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES


BY_____          DATE_____
SANDRA ALTIERI


BY_____          DATE_____
COURTNEY SCHWARTZ


BY_____          DATE_____
CHERYL HARDY


APPROVED AND AGREED TO BY CLASS COUNSEL


BY _Timothy G. Blood_ /By LH          DATE _9/27/2011_
TIMOTHY G. BLOOD
BLOOD HURST  & O'REARDON LLP


BY_____          DATE_____
JANINE L. POLLACK
MILBERG LLP

BY_____     DATE:  September 27, 2011
ADAM J. LEVITT
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC


APPROVED AND AGREED TO BY AND ON BEHALF OF REEBOK INTERNATIONAL
LTD.



BY_____     DATE_____
Name:
Title:



BY_____     DATE_____
JOHN P. HOOPER
REED SMITH LLP

BY_____          DATE_____
ADAM J. LEVITT
WOLF HADELSTEIN ADLER FREEMAN & HERZ LLP


APPROVED AND AGREED TO BY AND ON BEHALF OF REEBOK INTERNATIONAL
LTD.


BY_____          DATE___9-27-11_____
Name:  *Sarah Stuart*
Title:  *Assoc. General Counsel*


BY_____          DATE_____
JOHN P. HOOPER
REED SMITH LLP

BY_____          DATE_____
ADAM J. LEVITT
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC


APPROVED AND AGREED TO BY AND ON BEHALF OF REEBOK INTERNATIONAL
LTD.



BY_____          DATE_____
Name:
Title:


BY_____          DATE _9/27/11_____
JOHN P. HOOPER
REED SMITH LLP