## THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE REEBOK EASYTONE LITIGATION** | **Case No. 4:10-CV-11977-FDS** |
| This Document Relates to: All Actions | <u>CLASS ACTION</u> |

## <u>REEBOK INTERNATIONAL LTD.'S MEMORANDUM OF LAW RESPONDING TO OBJECTIONS</u>

REED SMITH LLP
John P. Hooper (Admitted *Pro Hac Vice*)
Russell A. Gaudreau III (BBO# 640842)
599 Lexington Avenue
New York, NY 10022

*Lead Counsel for Defendant Reebok International Ltd.*

Dennis J. Kelly (BBO #266340)
Shepard Davidson (BBO # 557082)
Andrea L. Martin (BBO # 666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000
Fax: (617) 345-3299
dkelly@burnslev.com
sdavidson@burnslev.com
amartin@burnslev.com

*Attorneys for Reebok International LTD.*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT .......................................................................................1

II. THE NUMBER OF CLASS MEMBERS REQUESTING EXCLUSION IS EXTREMELY SMALL.............................................................................................................4

III. THE OBJECTIONS FILED TO THE SETTLEMENT ARE MERITLESS......................6

    A. Six Objectors Support Reebok, Reebok's Shoes, and/or Reebok's Customer Service ......................................................................................................6

    B. Three Objectors Seek to Participate in the Relief Program ....................................8

    C. The Court Should Overrule as Meritless the Objections of Nikki Johnson............9

        1. Administrative Costs Relating to Notice and Claim Processing Is Dependent upon Class Member Response...................................................9

        2. Claim Processes are Typical in Class Action Settlements.........................11

        3. The Notice Program Was Effective and Complied with Due Process and the Notice Contained All Necessary Terms...........................11

        4. Substantial Discovery Was Produced to Allow the Parties to Assess the Merits of the Action ...............................................................13

        5. Proof of Purchase is Requested to Protect Against Fraud and is Common in Other Finally Approved Class Action Settlements...............15

    D. The Overwhelming Majority of the Class Supports the Final Approval of the Settlement.........................................................................................................16

IV. CONCLUSION................................................................................................................17

US_ACTIVE-108177757.9-JLGOLD

# TABLE OF AUTHORITIES

**Page**

**Other Authorities**

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ............................................................................................. 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................................................... 1

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ............................................................................................. 14

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) ................................................................................................................. 16

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ......................................................................................... 13

*In re 'Agent Orange' Prod. Liab. Litig.*,
597 F. Supp. 740(E.D.N.Y. 1984), aff'd 818 F.2d 145 (2d Cir. 1987) .................................. 6

*In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*,
263 F.R.D. 226 (E.D. Pa. 2009) .......................................................................................... 13

*In re Automotive Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 E.D. Pa. 2007 ....................................................................................... 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................................ 9, 14

*In re Checking Account Overdraft Litigation, MDL No.*,
2036, 2011 WL 5873389 (S.D. Fla. Nov. 22, 2011) ........................................................ 5, 12

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1322 (5th Cir. 1981) ............................................................................................ 10

*In re Excess Value Insurance Coverage Litigation*,
MDL No. 1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ...................................... 5, 9, 13

*In re Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ........................................................................................... 14

*In re NASDAQ MarketMakers Antitrust Litigation*,
187 F.R.D. 465, 479 (S.D.N.Y. 1998) .................................................................................. 5

*In re Pet Food Products Liability Litigation*,
629 F.3d 333 (3d Cir. 2010) ......................................................................................... 10, 14

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) aff'd 148 F.3d 283 (3d Cir.1998) ..................................... 4, 5

*In re Remeron Direct Purchaser Anti-Trust Litigation*,
No. Civ. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ............................................... 16

US_ACTIVE-108177757.9-JLGOLD

*In re Revisent Technologies, Inc. Securities Litigation*,
　　No. Civ. A. 00-CV-1014, 2005 WL 906361 (E.D. Pa. April 18, 2005) ................................. 10

*In re TD Ameritrade Account Holder Litigation*,
　　Nos. C 07-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ............................................ 16

*Lazy Oil Co. v. Witco Corp.*,
　　95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................................................................... 6

*Mathes v. Roberts*,
　　85 F.R.D. 710 (S.D.N.Y. 1980) ............................................................................................. 6

*McGee v. Cont'l Tire N. Am., Inc.*,
　　No. 06-6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009) ......................................................... 11

*Newby v. Enron Corp.*,
　　394 F.3d 296 (5th Cir. 2004) ............................................................................................... 14

*O'Keefe v. Mercedes-Benz*,
　　214 F.R.D. 266 (E.D. Pa. 2003) ............................................................................................. 5

*Turner v. Murphy Oil USA, Inc.*,
　　472 F. Supp. 2d 830 (E.D. La. 2007) .................................................................................... 16

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
　　226 F.R.D. 207, 237 (D.N.J. 2005) ........................................................................... 9, 11, 17

*White v. Experian Information Solutions, Inc.*,
　　Case No. SACV 05-1070, 2011 WL 2972054 (C.D. Cal. July 15, 2011) ............................... 16

US_ACTIVE-108177757.9-JLGOLD

Defendant Reebok International Ltd. ("Reebok") respectfully requests that the Court overrule and find no merit in the objections filed by Class Members and/or their counsel and finally approve the Settlement pursuant to Federal Rule of Civil Procedure 23.[1]

Reebok is submitting this memorandum of law responding to exclusions, objections and/or other issues related to this settlement "seven days prior to the Fairness Hearing" pursuant to the Preliminary Approval Order.  *See* Preliminary Approval Order ¶ 7 (Docket Entry # 47); *see also* Reebok International Ltd.'s Memorandum of Law in Support of Final Approval of Class Action Settlement at p. 10, n. 7 and p. 19 n. 10.

## I.  PRELIMINARY STATEMENT

The nationwide class action settlement submitted to the Court for final approval pursuant to Fed. R. Civ. P. 23 is fair, reasonable and adequate.  The overwhelming reaction from the Class has been extremely positive, notwithstanding the very small number of persons who have sought to exclude themselves and the mere 11 timely objections received.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (discussing the reaction of the class to the settlement as one of the factors relating to final approval of a class action settlement).

The settlement includes a fund of $25 million to provide cash relief to Class Members and to make other payments.  Reebok has also separately agreed to pay attorneys' fees of up to $3.5 million and costs of up to $100,000 plus make certain other payments.  In addition, the Parties have partnered with the Federal Trade Commission ("FTC"), which has provided extensive input and guidance, to design a consumer-friendly claim program and streamlined Claim Form.

---

[1] All capitalized terms herein shall have the meanings ascribed to them in the Settlement Agreement.

US_ACTIVE-108177757.9-JLGOLD

The settlement provides Class Members with a streamlined claim process that includes an easy to complete Claim Form that awards cash relief in an amount within a particular range to eligible Class Members based upon several, straightforward factors, including the number and type of Eligible Shoes items and/or Eligible Apparel items that Class Members purchased from December 5, 2008, up to and including October 12, 2011, as well as the total of the timely, valid and approved Claims submitted by all other Class Members and other factors specified in the Settlement Agreement and in the Class Notice.

Class Members were informed of the terms of the settlement through an extensive notice campaign that included: (i) publication of a summary notice; (ii) the mailing of over 300,000 notice packages to Class Members; (iii) the establishment of a toll-free telephone information hotline; (iv) a dedicated website; and (v) banner ads and other forms of electronic notice.  The Court-appointed Notice Administrator estimates that the notice program reached approximately 90% of the Class approximately four times, which is a testament to the effectiveness of the notice program.  *See* Declaration of Jeanne Finegan dated December 14, 2011 (Docket Entry # 57) at ¶¶ 11-36.

In light of the substantial and immediate benefits that the nationwide class action settlement provides to the purchasers of millions of pairs of Eligible Shoes and Eligible Apparel, there were only 130 timely requests for exclusion and 11 timely objections received.[2]  In fact, the issues raised by six persons, namely, Eveline Shekham, Jennifer Bishop, Jennifer Bishop, Christina Mitchell, Jessica Teigland and Martha Bartsch, are, in fact, not objections at all.  Instead, their statements support Reebok and/or Reebok's products and/or demonstrate the Company's responsiveness to complaints.  Three other persons, Elizabeth Flaherty, Lynette

---

[2] There were no requests to appear received by Reebok.

US_ACTIVE-108177757.9-JLGOLD

Davis and Christopher Copps, do not object to the amount of the settlement or the relief process. Instead, they believe they are owed compensation and they want to participate in the Settlement, which is the purpose of the relief program.

Of the remaining two objections, one was filed by Lori Rivero.  Reebok was informed that Ms. Rivero is in the process of withdrawing her objection.  Thus, this Court need not consider it.  *See* Exhibit 1 (e-mails from L. Rivero's counsel's office stating that they will be withdrawing her objection and have mailed the withdrawal to the Court).

That leaves only one remaining substantive objection, which was filed by Nikki Johnson. Her five main objections relate to the settlement amount, relief program, Claim Form, the dissemination of the notice and discovery.  Her objection is meritless and should be overruled because Ms. Johnson's objections are not supported by case law and should be rejected because

- The amount available to pay to Class Member is completely dependent upon their response and any amount included would have been sheer speculation;

- Claim processes, like this one, are typical in class action settlements;

- The notice was widely disseminated and was so effective that Ms. Johnson was able to file a timely objection;

- Substantial discovery was produced and it is immaterial if it was formally or informally produced since Class Counsel had access to it and could assess the value of the case; and

- Submitting a proof of purchase upon request is designed to protect the Court, the Class and the integrity of the class action settlement process and is common in other similar class action settlements.

- 3 -

Ms. Johnson's meritless objection should not detract from the substantial and immediate benefits that the Settlement would deliver to the Class as a whole.

Both the number of persons seeking exclusion and objecting are an extremely small percentage of the overall Class and clearly demonstrate that the Settlement has been favorably received by the overwhelming majority of Class Members, who recognize the tremendous benefits of the Settlement.  In sum, this Court should overrule the objections, find them meritless and finally approve the Settlement as fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23.

## II.    THE NUMBER OF CLASS MEMBERS REQUESTING EXCLUSION IS EXTREMELY SMALL

The extraordinary reaction of the Class favors settlement.  The Court should approve the Settlement because "so little negative feedback was received after such an extensive notice and outreach program" that it "weighs in favor of approving of the Proposed Settlement." *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir. 1998).  Only 130 individuals have timely sought exclusion from the Class for a variety of reasons.  *See* Affidavit of Jeanne C. Finegan dated January 6, 2012 (Docket Entry # 67) at ¶ 3. [3]

---

[3] In addition, a number of Class Members have filed both a Claim Form and request for exclusion, and "some of these" Class Members later withdrew the request for exclusion after being contacted by Class Counsel.  *See* Affidavit of Jeanne C. Finegan dated January 6, 2012 (Docket Entry # 67) at ¶¶  3-4.  In addition, the number of individuals requesting exclusion is actually less because several persons who are seeking to opt out are outside of the United States, and, thus, are not part of the Class, and several individuals liked the Eligible Shoes. *See* Carol Reinbold's Request for Exclusion ("quite honestly, I have been satisfied with the shoes . . . they do give me the support I need").  For example, Ashly M. Jones wished to be excluded from the Class because Reebok's shoes are "great shoes not [sic] matter the marketing . . . these are the greatest shoes I have ever worn for the comfort of my feet."  *See* Ashly M. Jones' Request for Exclusion; *see also* Eliza Moreno's Request for Exclusion ("I still enjoy my Reebok shoes"); Gloria Cooper's Request for Exclusion ("Still wearing my shoes to gym 3 times a week.  Feel I have got my money out of them"); Lindsay Blair's Request for Exclusion ("I love my shoes!").

Continued on following page

US_ACTIVE-108177757.9-JLGOLD

While the exact number of Class Members can only be estimated, it would be fair to state that the Class exceeds two million individuals.  If the Class were two million individuals, then the percentage of persons seeking exclusion is .006%, a very low percentage.  In light of the extraordinary notice to and response from the Class, the total number of timely requests for exclusion represents an infinitesimally small percentage of the Class.  This is a "tiny fraction of the [C]lass [and] [s]uch implicit support of the settlement weighs heavily in favor of [final approval] of the settlement."  *O'Keefe v. Mercedes-Benz*, 214 F.R.D. 266, 295 (E.D. Pa. 2003); *see also In re Excess Value Insurance Coverage Litigation*, MDL No. 1339, 2004 WL 1724980, at *11 (S.D.N.Y. July 30, 2004) (granting final approval where opt out rate was .25%); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (affirming final approval where .2% of the class opted out); *In re NASDAQ MarketMakers Antitrust Litigation*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) (describing as "minimal" an opt out rate of .39%).

Where, as here, the number of potential Class Members' requests for exclusion is exceedingly small, the overwhelmingly favorable reaction of the Class strongly suggests that the Settlement should be approved. *See id.; In re Checking Account Overdraft Litigation,* MDL No. 2036, 2011 WL 5873389, at *8 (S.D. Fla. Nov. 22, 2011) (stating that the "small number of objectors from [the] plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness").

---

Continued from previous page

US_ACTIVE-108177757.9-JLGOLD

III.    **THE OBJECTIONS FILED TO THE SETTLEMENT ARE MERITLESS**

Millions of pairs of Eligible Shoes and Eligible Apparel have been sold to Class

Members, hundreds of thousands of Class Notices were mailed and a broad publication program

reached an estimated nearly 90% of the Class approximately four times.  In addition, there was

unprecedented publicity relating to the FTC Action and the Settlement.  "In total, over 1,320

articles were published on the FTC Action and the Class Action Settlement." *See* Declaration of

Jeanne Finegan dated December 14, 2011 (Docket Entry # 57) at ¶ 25.

"The fact that some class members object is neither uncommon nor fatal to settlement

approval." *Lazy Oil Co. v. Witco Corp.,* 95 F. Supp. 2d 290, 334 (W.D. Pa. 1997).  It is the

nature of class action litigation that a settlement may not satisfy every class member.  *See In re*

*"Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 761 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145

(2d Cir. 1987); *Mathes v. Roberts*, 85 F.R.D. 710, 715 (S.D.N.Y. 1980) ("while the objectants

[sic] may have preferred a different resolution, such a preference is neither a ground for rejecting

the instant proposal as unfair and inequitable nor is it evidence of the inappropriateness of the

benefits to be accorded to plaintiffs").

In stark contrast to the objectors' claims of an inadequate Settlement, the Settlement, in

fact, provides immediate, substantial and real benefits to the Class.  Thus, these objections

should be overruled and this Settlement should be finally approved as fair, reasonable and

adequate, pursuant to Federal Rule of Civil Procedure 23.

A.    **Six Objectors Support Reebok, Reebok's Shoes, and/or Reebok's Customer**
      **Service**

The majority of the persons who submitted statements to the Court are not, in fact,

objections.  Instead, their statements support Reebok and/or its Eligible Shoes.  These six

US_ACTIVE-108177757.9-JLGOLD

persons are Eveline Shekham, Jennifer Bishop, Jennifer Bishop, Christina Mitchell, Jessica

Teigland and Martha Bartsch.

Four objectors were extremely satisfied with the EasyTone shoes and argued that Reebok

should not be "penalized."  *See* Objection of Eveline Shekham (Docket Entry #48).  For

example, Eveline Shekham states that the "promotion of physical exercise on behalf of Reebok

should be applauded" and that she recognizes "improvement in [her] physical tone" as a result of

the Eligible Shoes.  *Id.*  Similarly, Jennifer Bishop notes that the shoes "complement the work

out activities a person performs while wearing them."  *See* Objection of Jennifer Bishop (Docket

Entry #49).  Finally, Christina Mitchell "strongly believe[s] that the Easy Tone shoes helped tone

[her] calves."  *See* Objection of Christina Mitchell (Docket Entry #50); *see also* Objection of

Michele Selover (Docket Entry # 51) ("I loved Reebok foot wear for years and always purchased

them in the past").  Reebok agreed to the terms of the Settlement without making any admissions

in order to avoid the substantial expense, burden and uncertainty associated with the continued

litigation of the Plaintiffs' Action, notwithstanding the positive feedback from several objectors,

which demonstrates that the settlement amount is indeed fair, reasonable, and adequate.

In addition, two objectors support the positive treatment that they received from Reebok

relating to their prior issues with their Eligible Shoes.  Jessica Teigland argues that she did not

like the product, but has already received a refund.  *See* Objection of Jessica Teigland (Docket

Entry #52).  Further, Martha Bartsch states that "Reebok people were courteous, responsible,

attentive and most of all completely 'behind their product.'  They were <u>very fair</u> and

compensated me thusly for my problem."  "I couldn't ask for nicer treatment by a company." *See*

Objection of Martha Bartsch (Docket Entry # 53) (emphasis in original).

US_ACTIVE-108177757.9-JLGOLD

B.     <u>Three Objectors Seek to Participate in the Relief Program</u>

While the abovementioned six objectors are clearly pleased with the Eligible Shoes,

Reebok's customer service and/or the Relief Program, three objectors do not object to the

amount of the settlement and/or the Relief Program.  Instead, they are supportive of the fact that

they will receive compensation because they received false and misleading information or were

otherwise dissatisfied with the EasyTone shoes.  *See* Elizabeth Flaherty (Docket Entry # 54) ("I

do not think that they toned and [sic] part of my body and I worn [sic] them quite often");

Lynette Davis (Docket Entry #55) ("I was dissatisfied with these shoes after about six months"

and that "I feel they did not live up to [the] commercial"); Christopher Copps (Docket Entry #64)

("My objection/purpose is a refund . . . because of false and misleading information on those

items.").[4]  In addition, while Michele Selover (Docket Entry # 51) likes Reebok shoes, she did

not like this particular shoe.

The relief program is specifically designed to address these objectors' claims.  In fact,

these objections are precisely why this nationwide class action settlement should be finally

approved as fair, reasonable and adequate so that relief can be promptly delivered to eligible

Class Members to address and respond to claims similar to these.  The relief program explicitly

provides that Reebok will provide refunds to eligible Class Members who completed the

---

[4] In addition, an untimely objection was filed by Lubova Izotkina that was received by the Administrator on January 9, 2012.  This Court should not consider her objection because Ms. Izotkina's objection was submitted far too late and did not comply with the Court's Preliminary Approval Order to send the objection to the Court and the Parties.  *See* Preliminary Approval Order at ¶ 12.a; Class Notice at § 24; *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 476 (S.D. Fla. 2002) (denying objection because it was "extraordinarily untimely").  In addition, Ms. Izotkina resides outside of the United States, and, thus, is not part of the Class.  To the extent that the Court considers Ms. Izotkina's objection, Reebok incorporates by reference herein to its responses in this Memorandum of Law.

streamlined Claim Form relating to their Eligible Shoes and/or Eligible Apparel.  *See* Settlement

Agreement § III.A-C.

### C.        The Court Should Overrule as Meritless the Objections of Nikki Johnson

Of the two timely objections, Lori Rivero is in the process of withdrawing her objection.

*See* Exhibit 1.  The remaining objection was filed by Nikki Johnson.  (Docket Entry # 65).  Ms.

Johnson's objects that: (i) the Class does not know the amount of money at issue or the universe

of possible damages; (ii) there is a needless claim process; (iii) the dissemination of the notice

was insufficient; (iv) the discovery produced was through informal means; and (v) proof of

purchase is not necessary.[5]  For the reasons stated below, all of her objections are meritless and

this Court should overrule Ms. Johnson's objection in its entirety.

### 1.        Administrative Costs Relating to Notice and Claim Processing Is Dependent upon Class Member Response

First, Ms. Johnson claims that "the Class does not know the amount of money at issue"

that Class Members may receive overall or the "universe of possible damages to compare against

the settlement."  *See* Objection of Nikki Johnson at page 4 (Docket Entry # 65).  It is unrealistic

to expect the Parties to provide an exact dollar amount in the notice for administrative costs

relating to notice and claim processing while the Settlement is being implemented.  Such a figure

---

[5] Ms. Johnson's objection must be compared against "[t]he fact that an overwhelming majority of the Class did not file objections" which "is a significant element to consider in determining the overall fairness of the settlements."  *In re Automotive Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 E.D. Pa. 2007; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); *In re Excess Value Insurance Coverage Litigation*, 2004 WL 1724980, at *11 (stating that "class reaction to the proposed Settlement has been overwhelmingly favorable and also weighs (strongly) in favor of approving the Settlement" where there were a small percentage of exclusion requests and "only" 18 objections); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 237 (D.N.J. 2005) (the court concluded that, after "such little negative feedback" from the class, "the settlement is generally approved of by the Class")

US_ACTIVE-108177757.9-JLGOLD

is, needless to say, completely dependent upon the response from Class Members.  If the Parties had provided such a figure, it would have been mere speculation, which could have resulted in providing incorrect information to the Class, opening up the Settlement to yet another objection. Furthermore and for the reasons stated in Reebok's brief in support of final approval, there are many unquantifiable issues against the Class recovering that prevent the inclusion of a dollar amount for the "universe of possible damages."

The $25 million settlement fund is more than enough to pay eligible Class Members who submit Claim Forms.  The agreed-upon amount is fair, reasonable and adequate because, as aptly stated by the Fifth Circuit, "[a] just result is often more than an arbitrary point between competing notions of reasonableness."  *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1322, 1325 (5th Cir. 1981).

In addition, to the extent Ms. Johnson objects to including administrative costs in the overall settlement fund, numerous other class action settlements have been approved where administrative fees and costs and other fees and costs are deducted from the settlement fund. *See*, *e.g., In re Pet Food Products Liability Litigation,* 629 F.3d 333, 340 (3d Cir. 2010) (affirming approval of class action settlement where deductions were taken out of settlement fund for attorneys' fees, expenses, notice costs and settlement administration costs); *McGee v. Cont'l Tire N. Am., Inc.,* No. 06-6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009) (granting final approval of settlement where the settlement amount was used to pay any and all notice and claim processing administrative fees and costs); *In re Revisent Technologies, Inc. Securities Litigation,* No. Civ. A. 00-CV-1014, 2005 WL 906361, at *2 (E.D. Pa. April 18, 2005) (approving class action settlement where the settlement fund included payments for administrative costs, taxes, and court approved costs, expenses, and attorneys' fees).  In this settlement and unlike some of

US_ACTIVE-108177757.9-JLGOLD

the settlements cited above, Reebok has agreed to separately pay attorneys' fees and costs and awards to class representatives in order to drive as much available relief to Class Members.

### 2.      Claim Processes are Typical in Class Action Settlements

A claim submission process is standard in class action settlements, contrary to the claims made by Ms. Johnson, who objects to filing a claim at all.  *See* Objection of Nikki Johnson at page 3 (Docket Entry # 65).  *McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234, 2009 WL 539893, at *1 (D.N.J. Mar. 4, 2009) (granting final approval of settlement where class members were required to submit a claim form); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. at 207 (same).  Payments to Class Members cannot be made merely because of one's presence on a mailing list, which may be incomplete, may deal with products that are not in the Class or may include dates that are outside of the Class Period.

### 3.      The Notice Program Was Effective and Complied with Due Process and the Notice Contained All Necessary Terms

The extensive notice disseminated to the Class and the contents of that notice was effective, complied with this Court's Preliminary Approval Order and satisfied all due process requirements.  Thus, Ms. Johnson's objection as to the dissemination and the sufficiency of the notice should be overruled.  *See* Objection of Nikki Johnson at page 3 (Docket Entry # 65).

As a testament to the effectiveness of the notice program, Ms. Johnson, who in fact received a Class Notice, submitted a timely objection and, as she intimates, filed a timely claim, argues that "in a world of junk mail important notices such as 'you are a member of a class action' may go unopened and unread."  *See* Objection of Nikki Johnson at page 3 (Docket Entry #65).  This objection is clearly unfounded.  Here, the success of the notice program is particularly evident by the fact that the "settlement was widely known and appreciated," including, among others, the extensive coverage of the settlement with the FTC.  *In re Checking*

US_ACTIVE-108177757.9-JLGOLD

*Account Overdraft Litigation*, 2011 WL 5873389, at \*7.  In fact, there was unprecedented

publicity relating to the FTC Action and the Settlement.  "In total, over 1,320 articles were

published on the FTC Action and the Class Action Settlement." *See* Declaration of Jeanne

Finegan dated December 14, 2011 (Docket Entry # 57) at ¶ 25.  Clearly, Ms. Johnson was

informed of the Settlement because she submitted a timely objection and possibly a claim,

demonstrating the effectiveness of the notice program.  In addition, the Notice Administrator

estimated that "nearly 90% of Class Members" were reached "on average 4 times."[6] *Id.* at ¶ 5.

Ms. Johnson also contests the sufficiency of the notice, but it is entirely unreasonable to

expect the Parties to estimate the number of Class Members.  Ms. Johnson asserts that the notice

fails to provide "how many class members purchased eligible Reebok shoes or apparel from

December 5, 2008 through October 12, 2011 or the value of products purchased." *See* Objection

of Nikki Johnson at page 3 (Docket Entry #65).

While Reebok has sold millions of pairs of Eligible Shoes and Eligible Apparel, Reebok

cannot determine the precise number of Class Members involved in the Settlement.  Reebok

typically sells its products through third parties, such as retailers.  Thus, Reebok does not know

who purchased the Eligible Shoes and/or Eligible Apparel or how many each consumer

purchased.  For instance, objector Nikki Johnson purchased more than one pair of shoes, yet it

would be reasonable for Reebok to expect that each consumer would only purchase a single pair

---

[6] The Notice Administrator used overlapping notice techniques, Class Members were afforded several different opportunities to learn of the Settlement and exercise their rights.  These overlapping techniques included, among others: direct mail where Reebok had applicable addresses, including for Ms. Johnson publication of a short-form notice in nationally circulated consumer magazines; banner advertising on widely visited mobile websites; advertising on Pandora, a mobile and internet music venue; opt-in text messaging; a press release in English and Spanish; a social media release to key health and fitness blogs; sponsored tweets on Twitter; an informational website (www.reeboksettlement.com); and a toll-free information line with the ability to reach a live operator.  *See, generally,* Declaration of Jeanne Finegan dated December 14, 2011 (Docket Entry # 57).

US_ACTIVE-108177757.9-JLGOLD

of Eligible Shoes and/or Eligible Apparel.  *See* Objection of Nikki Johnson at page 3 (Docket

Entry #65) ("I purchased more than two.").

Case law does not support Ms. Johnson's objections relating to the lack of the precise

number of Class Members in the notice.  The notice struck an appropriate balance by informing

Class Members of the terms of the Settlement, their rights and options (including the right to

object or request exclusion), applicable dates and deadlines, and the binding effect of the

Settlement, if finally approved.  *See In re Excess Value Insurance Coverage Litigation*, 2004 WL

1724980, at *1, 5 n.6 (granting final approval of class action settlement where the settlement

notice described the terms and procedures of the settlement, the settlement's benefits to the class

and the procedures for submitting objections and requests for exclusion).  Here, "the notice was

no more complicated than necessary" and provided all of the requisite information to Class

Members so that they could protect their rights.  *In re American Investors Life Insurance Co.*

*Annuity Marketing and Sales Practices Litigation,* 263 F.R.D. 226, 237 (E.D. Pa. 2009).

Moreover, where, as here, notice of the Settlement was sent to the Attorney General and

the Attorney General has not "requested further information regarding the action," the Court

should find the Settlement fair, reasonable and adequate.  *See Hartless v. Clorox Co.,* 273 F.R.D.

630, 636 (S.D. Cal. 2011).

### 4.     Substantial Discovery Was Produced to Allow the Parties to Assess the Merits of the Action

The Court should also overrule Ms. Johnson's objection that the settlement is inadequate

since, as she claims, "much of the information was provided by Reebok was though [sic]

informal means." *See* Objection of Nikki Johnson at page 4 (Docket Entry #65).  Reebok

produced substantial electronic materials and hardcopy documents to Plaintiffs to allow them to

fully evaluate the strengths and weaknesses of the Action.

US_ACTIVE-108177757.9-JLGOLD

It is immaterial whether discovery was provided through formal or informal means.  *In re Pet Food Products,* 629 F. 3d at 351 (granting approval of class action settlement where both informal and formal discovery was conducted); *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("The overriding theme of our case law is that formal discovery is not necessary as long as . . . there are substantial factual bases on which to premise settlement."); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming final approval of class action settlement and explicitly rejecting "common belief" that "formal discovery" is to be conducted in every case as it "wast[es] the time of this Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation and may often serve as a vehicle to harass a party").

In fact, there has been extensive discovery, which enabled the Parties to evaluate the merits of the case, the risk of litigation and the value of the settlement.  Reebok produced to Plaintiffs, through Class Counsel, documents, access to electronic databases maintained by Reebok and access to key personnel at Reebok.  In total, Class Counsel was given access to approximately 400,000 documents encompassing over 50 GB of data, in addition to access to three live Reebok databases consisting of over 215 GB of data and hundreds of thousands of data assets.[7]  In addition, Class Counsel conducted interviews of primary Reebok corporate witnesses who have been involved with the Eligible Apparel and Eligible Shoes.

Thus, Class Counsel was provided with more than sufficient information to allow Class Counsel to adequately assess the proposed Settlement.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001);  *see  In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 96-97 (D.

---

[7] Reebok will not respond to objections relating to Class representatives or attorneys' fees as Reebok expects those issues to be addressed by Class Counsel.

US_ACTIVE-108177757.9-JLGOLD

Mass. 2005) (granting final approval where "discovery has been sufficient to give counsel an informed view of the strengths and weaknesses of plaintiffs' case").  As such, the Court should overrule this objection.

5.   **Proof of Purchase is Requested to Protect Against Fraud and is Common in Other Finally Approved Class Action Settlements**

The Claim Form, which was designed with extensive input and guidance from the FTC, is just a few pages long, is easily understood and asks only a few questions.  Notwithstanding the streamlined Claim Form, Ms. Johnson objects to the requirement of providing a sales receipt or equivalent.  *See* Objection of Nikki Johnson at page 3 (Docket Entry #65).  Such a provision is, in fact, designed to protect the Court and the integrity of the claim process and to act as a safeguard to prevent fraud.  In addition, requiring proof of purchase has been found to be reasonable in other class action settlements that have been finally approved.

Class Members are only required to submit documentation in limited and specific circumstances and to demonstrate that they are, in fact, part of the Class.  Pursuant to the terms of the Settlement, a Class Member is not automatically required to provide proof of purchase to submit a Claim.  Rather, the Claim Form clearly states that "If you submit a claim where the amount sought exceeds $200.00, the Class Action Settlement Administrator may request proof of purchase to validate your claim."  *See Reebok Shoe and Apparel Class Action Settlement Claim Form* (emphasis added).  Similarly, the Claim Form also allows, but does not require, the Class Action Settlement Administrator to request verification.  *Id.*

Nonetheless, it is entirely reasonable to subject Class Members to provide proof of purchase.  Supporting documentation, such as proof of purchase, is simply requested to confirm class membership and to protect against the potential for fraud either in the submission of a Claim and/or to object to the settlement.  Other finally approved class action settlements have

required class members to submit claim forms and supporting documentation as a precondition to receiving relief under a class action settlement.

For example, in *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 855 (E.D. La. 2007), the court overruled the objection of a class member for lack of standing where the settlement notice specifically stated that objectors must provide proof of residency.  In that case, the objector "did not provide these materials with his written objection."  *Id; see also In re TD Ameritrade Account Holder Litigation*, Nos. C 07-2852, 2011 WL 4079226, at *13 (N.D. Cal. Sept. 13, 2011) (overruling objections where the Claims Administrator considers forms of proof to support claims); *White v. Experian Information Solutions, Inc.*, Case No. SACV 05-1070, 2011 WL 2972054, at *3 (C.D. Cal. July 15, 2011) (finally approving a class action settlement where claimants were required to submit documentation in order to support a claim for damages); *In re Remeron Direct Purchaser Anti-Trust Litigation*, No. Civ. 03-0085, 2005 WL 3008808, at *11 (D.N.J. Nov. 9, 2005) (granting motion for final approval of the settlement where class members were required to submit completed claim form and supporting documentation).   Therefore, this objection is unfounded and should be overruled. [8]

### D.   The Overwhelming Majority of the Class Supports the Final Approval of the Settlement

There is no disguising the fact that the overwhelming majority of the Class supports this settlement, including those who have filed claims.[9]  As aptly stated by another court when

---

[8] Objector Nikki Johnson, citing to *Devlin v. Scardelletti*, 536 U.S. 1 (2002), claims that the Settlement places "unlawful requirements" on objectors to submit a proof of purchase.  However, *Devlin* addresses the need to intervene, and does not state any limitations or other requirements regarding proof of claim. Johnson's citation to *Devlin* for "unlawful requirements" to object is simply not supported by that case and her objection must fail and in light of the arguments raised by Reebok in this memorandum of law.

[9] To the extent Reebok has not explicitly responded herein to any remaining objections to the Settlement or any of its terms, Reebok states that those remaining objections are without merit and respectfully

Continued on following page

- 16 -

considering a much larger number of objections submitted to it, "it is the conclusion of this [c]ourt that the substance of the objections to this Proposed Settlement are without merit and do not weaken this Court's decision that the Settlement is fair, adequate and reasonable, and that the Settlement provides substantial and real benefits to the Class.  The Class has recognized the exceptional benefits provided by the Settlement."  *Varacallo*, 226 F.R.D. at 248.

## IV.   <u>CONCLUSION</u>

The Court should not allow 11 timely objections (and, in fact, only one substantive objection) to obscure the tremendous benefits provided by the Settlement.  The overwhelmingly favorable reaction of the Class to the Settlement warrants final approval of the Settlement.  Thus, Reebok respectfully requests that the Court overrule all objections, finally approve the Settlement as fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23 and issue related relief as previously requested by the Parties.

Dated: January 10, 2012      Respectfully submitted,

             REEBOK INTERNATIONAL LTD.

             By its attorneys,

             /s/ Russell A. Gaudreau III
             John P. Hooper (Admitted *Pro Hac Vice*)
             Russell A. Gaudreau III (BBO# 640842)
             **REED SMITH LLP**
             599 Lexington Avenue
             New York, NY 10022
             Tel: (212) 521-5400
             Fax: (212) 521-5450
             jhooper@reedsmith.com
             rgaudreau@reedsmith.com

---

Continued from previous page

requests that the Court overrule any and all remaining objections and finally approve the settlement as fair, reasonable and adequate.

US_ACTIVE-108177757.9-JLGOLD

Lead Counsel

/s/ Dennis J. Kelly
Dennis J. Kelly (BBO #266340)
Shepard Davidson (BBO # 557082)
Andrea L. Martin (BBO # 666117)
**BURNS & LEVINSON LLP**
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000
Fax: (617) 345-3299
dkelly@burnslev.com
sdavidson@burnslev.com
amartin@burnslev.com

US_ACTIVE-108177757.9-JLGOLD

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class postage pre-paid U.S. mail to those indicated as non-registered participants on January 10, 2012, which are:

Eveline Schaffer Shekhman
26 Pembroke Hill
Framingham, CT 06032

Jennifer Bishop
29 Hillgate Place
Aliso Viejo, CA 92656

Christina Mitchell
P.O. Box 1391
Glenpool, OK 74033

Michele Selover
617 Myrtle Road
North Brunswick, NJ 08902

Jessica Teigland
3261 N W Orchard Avenue
Corvallis, OR 97330

Elizabeth Flaherty
19 Holman Street
Allston, MA 02134

Martha Bartsch
636 Village Park Dr. # 203
Wilmington, NC 28405

Lynette L Davis
283 Rainbow Cv.
Rainbow City, AL 35906-8637

Christopher Copps
45 Rathbone
Mount Clemens, MI 48043

Nikki Johnson
3141 Hood Street
Suite 200

Dallas, TX 75219

Lori Rivero
13641 Camino de Oro Court
Corpus Christi, TX 78418

Lubova Izotkina
Bauskas 17-11
Riga, LV-1004
LATVIA

/s/  Russell A. Gaudreau III
Russell A. Gaudreau III